PEOPLE v PAQUETTE

Docket No. 161006. Submitted June 7, 1995, at Detroit. Decided
November 21, 1995, at 9:00 A.M. Leave to appeal sought.

Philip J. Paquette was convicted in the Huron Circuit court, M.
Richard Knoblock, J., of second-degree murder, was sentenced
to a term of twenty to forty years in prison, and was ordered to
pay restitution that included loss of income of the victim's
father. The conviction arose out of an argument between the
defendant and the victim at a party that escalated into several
successive fights that ultimately resulted in the defendant
fatally stabbing the victim. The defendant appealed.

The Court of Appeals *held:*

1. Because the defendant failed to object to the jury instruc-
tion relative to the included offense of voluntary manslaughter,
appellate review is waived absent a showing of manifest injus-
tice.

2. The trial court, in response to a jury request, reinstructed
the jury with respect to the murder charges and reread CJI2d
16.9, which explained the difference between murder and vol-
untary manslaughter. Because the jury did not express confu-
sion with or request reinstruction regarding voluntary man-
slaughter, there was no need to give CJI2d 16.8, which explains
the essential elements of voluntary manslaughter. The instruc-
tions given were not confusing. Accordingly, manifest injustice
will not result from the absence of further appellate review of
the jury instructions.

3. Although one remark by the trial court during its disposi-
tion of an objection may have been inappropriate, none of the
trial court's remarks during the trial demonstrate bias on the
part of the court. In the absence of an objection at trial,
appellate review is available only on a showing of manifest
injustice, which was not shown.

4. Because the defendant did not object to the prosecution's
questioning of the defendant or closing arguments, appellate

REFERENCES

Am Jur 2d, Criminal Law §§ 572-574, 1051-1062.
Measure and elements of restitution to which victim is entitled
under state criminal statute. 15 ALR5th 391.

review of alleged misconduct by the prosecution is foreclosed unless the misconduct is so egregious that no curative instruction could have removed the prejudice to the defendant or if manifest injustice would result from the failure to review the alleged misconduct. The defendant opened the area of inquiry that is claimed to have resulted in prosecutorial misconduct; accordingly, the prosecution's further questioning and arguments with respect to that topic were proper.

5. The testimony concerning the defendant's lack of remorse during police interviews was properly admitted on the basis that it was relevant to the question of premeditation and deliberation. The prosecution's closing argument regarding the defendant's lack of remorse was proper for the same reason.

6. The trial court did not err in determining that the prosecution had no further obligation beyond that which it had already done to secure the presence of two witnesses for trial, the prosecution being obligated only to list known res gestae witnesses.

7. The trial court did not abuse its discretion by departing from the recommended minimum sentence of four to fifteen years, because the evidence showed that the defendant had inflicted multiple stab wounds directed to the areas of vital organs and the particularized nature of the defendant's acts was not reflected in the guidelines recommendation.

8. The trial court erred in awarding restitution for the loss of income of the victim's father. MCL 780.766(5); MSA 28.1287(766)(5) provides for reimbursement to the victim or the victim's estate of income loss by the victim as a result of the offense, but no similar provision is made for reimbursement of income loss by family members of the victim. Accordingly, on remand, the trial court must reduce the level of restitution by the amount of lost income of the victim's father that was included in the original order of restitution.

9. The defendant is entitled to a correction of his presentence investigation report by the striking of those matters that the trial court indicated it would strike.

Conviction and sentence affirmed, but remanded for modification of the restitution order and correction of the presentence report.

CRIMINAL LAW — RESTITUTION — LOST INCOME.

An order of restitution entered in a criminal case may include reimbursement of a victim's lost income, but may not include reimbursement of income loss of a member of the victim's family (MCL 780.766[5]; MSA 28.1287[766][5]).

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Leslie A. Hagen,* Prosecuting Attorney, and *Steven B. Flancher,* Assistant Attorney General, for the people.

State Appellate Defender (by *Charles J. Booker*), for the defendant on appeal.

Before: CAVANAGH, P.J., and MARKMAN and L. M. GLAZER,* JJ.

PER CURIAM. Defendant appeals his conviction of and sentence for second-degree murder, MCL 750.317; MSA 28.549, as well as that portion of the trial court's restitution order requiring restitution for the loss of income of the victim's father. Defendant further seeks remand to the trial court for correction of his presentence report. We affirm with respect to defendant's conviction and sentence. We reverse and remand with respect to the trial court's restitution order and further remand for correction of defendant's presentence report.

Defendant was convicted of the stabbing death of Michael Gravelle at Gravelle's home on July 3, 1992. There were several people attending a party at the Gravelle's cottage that night. Testimony by individuals at the party revealed that an argument ensued between defendant and Greg DeBlauwe. Guests at the party pulled defendant and DeBlauwe apart, after which Mike Gravelle came over and said a few words. Shortly thereafter Gravelle and defendant started fighting. They fought several times, and, during the last fight, defendant stabbed Gravelle. Gravelle died as a result of the stab wounds.

Defendant argues that he was denied his right to a fair trial when the trial court failed to in-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

struct the jury with regard to the elements of the lesser included offense of voluntary manslaughter. More particularly, defendant claims that the court erred in instructing the jury with regard to only the provocation aspect of voluntary manslaughter and not the elements of voluntary manslaughter. Defendant did not object to the jury instructions given at trial on this basis and, therefore, has not preserved this issue for appeal. *People v Cross,* 202 Mich App 138, 148; 508 NW2d 144 (1993). Failure to object to a jury instruction waives appellate review absent manifest injustice. *Id.*

Jury instructions are read in their entirety to determine if error occurred requiring reversal. *People v Gaydosh,* 203 Mich App 235, 237; 512 NW2d 65 (1994). In this case, the trial court first gave the jury instructions regarding first- and second-degree murder. The court then read the jury instructions regarding voluntary manslaughter and self-defense. The voluntary manslaughter instruction given by the court was a verbatim reading of CJI2d 16.9. During deliberations, the jury requested a clarification of the murder charges. The trial court reinstructed the jury and, in doing so, restated CJI2d 16.9.

CJI2d 16.9 explains the difference between murder and voluntary manslaughter. The use note for that instruction provides:

> This instruction should be given after murder instructions, as part of the main charge to the jury. If jurors express confusion or return to request reinstruction on voluntary manslaughter, the trial court should combine CJI2d 16.9 (which explains the difference between murder and voluntary manslaughter) with CJI2d 16.8 (which explains the essential elements of voluntary manslaughter).

Although in this case the jury asked for additional instruction, it did so with respect to the murder charges. The jury did not express confusion or return to request reinstruction with respect to voluntary manslaughter. Unlike the case relied upon by defendant, *People v Townes,* 391 Mich 578; 218 NW2d 136 (1974), the trial court did not give a confusing instruction, and the jury, although asking for an additional instruction regarding the murder charges, did not request an instruction about the differences between the murder and voluntary manslaughter charges. Furthermore, unlike the court in *Townes,* the court in the instant case did not effectively remove voluntary manslaughter from the jury's consideration. *Id.* at 588. Accordingly, we find no manifest injustice in the instant case.

Defendant next argues that he was denied a fair trial when the trial court criticized defense counsel's examination and made prejudicial comments before the jury. Defendant did not object to the trial court's conduct at trial. In the absence of objection, this Court may review the matter if manifest injustice results from the failure to review. *People v Collier,* 168 Mich App 687, 697; 425 NW2d 118 (1988).

A trial court has wide, but not unlimited, discretion and power in the matter of trial conduct. *Id.* at 698. Portions of the record should not be taken out of context in order to show trial court bias against defendant; rather the record should be reviewed as a whole. *Id.* at 697-698. A trial court's conduct pierces the veil of judicial impartiality where its conduct or comments unduly influence the jury and thereby deprive the defendant of a fair and impartial trial. *Id.* at 698.

Defendant's first complaint is that prejudice toward him arose as the result of a gratuitous

remark by the trial court in ruling on an objection. However, a review of the entire exchange demonstrates that the trial court was simply reviewing what it believed to be the testimony in order to rule on the objection. Defendant next argues that prejudice toward him also arose as the result of the trial court commenting that a witness, an emergency medical technician, was "way over his head on all of these opinions." Although it would have been better for the trial court not to have made this statement, we do not believe that this comment unduly influenced the jury.

We have reviewed the balance of defendant's arguments that the trial court repeatedly criticized defense counsel and made prejudicial comments before the jury. However, we believe the remaining complaints concern the trial court's attempt to control the conduct of the trial. In any event, having reviewed all of defendant's allegations, we do not believe the record as a whole shows a bias on the part of the trial court. Accordingly, we find no manifest injustice in the instant case.

Defendant next argues that the prosecutor's questioning of defendant during closing arguments burdened his right to be present at trial and participate in his own defense, thus denying him a fair trial. Defendant's argument centers on the prosecutor's questions and argument regarding defendant's apparent change in story after listening to the testimony of other witnesses. Defendant's only objections to the prosecutor's questions were that one question was a compound question and that another was argumentative. Defendant did not object to the prosecutor's argument concerning this issue. Appellate review of alleged prosecutorial misconduct is foreclosed where the defendant fails to object or request a curative

instruction, unless the misconduct was so egregious that no curative instruction could have removed the prejudice to the defendant or if manifest injustice would result from our failure to review the alleged misconduct. *People v Allen,* 201 Mich App 98, 104; 505 NW2d 869 (1993).

Claims of prosecutorial misconduct are decided case by case. *Id.* The reviewing court examines the record and evaluates the alleged improper remarks in context. *Id.* The test is whether defendant was denied a fair and impartial trial. *Id.* During direct examination, defendant testified concerning how his sitting through trial had somewhat helped him piece things together from that evening and how his review of the police report helped him fill in some spots of the evening he did not remember. Thus, defendant opened the door to the questions asked by the prosecutor on that subject. Moreover, pursuant to *People v Buckey,* 424 Mich 1; 378 NW2d 432 (1985), we believe that the prosecutor's questioning and closing arguments regarding defendant's credibility were proper. See also *Allen, supra* at 104.[1]

Defendant next argues that he was denied a fair trial when the prosecutor argued and elicited testimony that defendant did not appear remorseful during police interviews. We disagree. Defendant's conduct after the killing is relevant to a determination whether there was premeditation and deliberation sufficient for a finding of first-degree murder. *People v Schollaert,* 194 Mich App 158, 170; 486 NW2d 312 (1992). Therefore, we believe that the questioning regarding defendant's lack of remorse following the death of the victim, or even the stabbing of the victim, would be relevant in

---

[1] We further do not believe that the prosecutor's reference to the victim's friends and family denied defendant a fair and impartial trial.

the instant case.[2] Accordingly, the questioning did not inject issues broader than the guilt, or innocence of the accused.[3] Defendant failed to object to the prosecutor's argument regarding defendant's lack of remorse. Thus, the issue is not preserved absent a miscarriage of justice. *Allen, supra* at 104. We find that the prosecutor's argument regarding defendant's lack of remorse properly involved comment regarding relevant evidence. Furthermore, the prosecutor's argument regarding defendant's actions during the arraignment was based on evidence presented by defendant in his case in chief. We thus find no miscarriage of justice.

Defendant next argues that the prosecutor failed to exercise due diligence in securing the presence of two res gestae witnesses, Craig Sandles and Christine Turner. We disagree. A prosecutor's duty with respect to res gestae witnesses is only to list such witnesses known at the time of the filing of the information and those that become known before trial. There is no longer any duty to endorse or produce such witnesses. MCL 767.40a; MSA 28.980(1); *People v Burwick,* 450 Mich 281, 288-289; 537 NW2d 813 (1995). The trial court did

[2] Defendant points out that he had two separate interviews with the police. Defendant argues that at the first interview, he did not know the victim was dead. Defendant thus apparently believes that it would not have been reasonable for him to show remorse without knowledge of the victim's death. However, we disagree with this proposition. Defendant reasonably could have been expected to show remorse over the stabbing and the potential harm or injury that might be suffered by the victim. The prosecutor argues that at the second interview defendant did know of the victim's death. However, the prosecutor does not cite any testimony in the transcript to support this contention. In any event, as stated above, we do not find knowledge of the victim's death dispositive with respect to this issue.

[3] Defendant's argument focuses solely on the alleged misconduct of the prosecutor. Defendant does not argue that the trial court abused its discretion in admitting the evidence of defendant's remorse or lack of remorse. In any event, we do not believe the trial court abused its discretion.

not err in determining that the prosecutor had no further obligation beyond that which he had already done in this case to secure the presence of Sandles and Turner at trial.

The defendant further argues that the trial court abused its discretion by refusing to grant a six-day continuance until December 21, 1992, to allow the production of Craig Sandles. However, having reviewed the proposed testimony, we do not find that defendant was prejudiced by the denial of a continuance. *People v Lawton,* 196 Mich App 341, 348; 492 NW2d 810 (1992).[4] Accordingly, the trial court did not abuse its discretion in denying the motion for a continuance. Without citation to authority in support of his proposition, defendant also claims that the trial court erred in failing to instruct the jury that Turner's testimony would have been favorable to the defense. However, because there was due diligence, the trial court was under no obligation to fashion such a remedy. *People v Pearson,* 404 Mich 698, 723; 273 NW2d 856 (1979).[5]

Defendant next argues that his sentence is disproportionate and that the trial court relied upon inadequate and erroneous reasons for departing from the sentencing guidelines. Defendant claims that he should be resentenced by a different judge. We disagree. A sentence constitutes an abuse of

[4] The trial court found Sandles to be a cumulative witness with nothing to add. To the extent Sandles' testimony would be beneficial to defendant, the mere fact that the favorable testimony is cumulative is not necessarily dispositive with respect to the issue of prejudice. In any event, however, we believe that even to the extent Sandles' testimony, as proposed by defendant, would have been somewhat beneficial to defendant, defendant has not shown prejudice as a result of the lack of such testimony.

[5] Defendant apparently also requested the trial court to allow police witnesses to testify regarding what Sandles and Turner told them. The trial court ruled, however, that the proposed testimony was hearsay and thus denied the request. Defendant has not specifically argued how the trial court erred in rendering this determination.

discretion if it violates the principle of proportionality by being disproportionate to the seriousness of the circumstances surrounding the offense and the offender. *People v Milbourn,* 435 Mich 630; 461 NW2d 1 (1990). The Sentencing Information Report recommended a minimum sentence range of 48 to 180 months' imprisonment. The trial court departed from the guidelines and instead sentenced defendant to 240 to 480 months' imprisonment. In departing from the guidelines, the trial court indicated that Offense Variable 3 did not adequately account for this crime. The court indicated that defendant deliberately stabbed the victim not once, but six times. The court also considered that defendant did not just stab randomly but instead stabbed in the area of vital organs. The court further reasoned:

> But the fact that he was on the premises, had an opportunity to leave—to leave, refused to do so, insisted on—on obstinately standing his ground and using this weapon in the fashion that he used it resulting in the death of this young man I think are factors that are not adequately addressed by the guidelines and for that reason, I do not feel constrained to keep the minimum sentence within that provided by the guidelines.

We do not believe that the trial court abused its discretion in sentencing defendant. Obviously, therefore, it is unnecessary for us to consider whether a different judge should resentence defendant.

Defendant next argues that the trial court erred in awarding restitution for the loss of income of Gravelle's father. Defendant claims that the Crime Victim's Rights Act, MCL 780.766; MSA 28.1287(766), does not authorize restitution of this loss. We agree.

MCL 780.766(5); MSA 28.1287(766)(5) provides in pertinent part:

> If a crime results in physical or psychological injury to a victim, the order of restitution may require that the defendant do 1 or more of the following, as applicable:
>
> * * *
>
> (c) Reimburse the *victim* or the victim's estate for after-tax income loss suffered by the victim as a result of the offense.
>
> (d) Pay an amount equal to the cost of psychological and medical treatment for members of the *victim's family* that has been incurred as a result of the offense. [Emphasis added.]

Thus, the Legislature sought to distinguish expressly between the "victim" and the "victim's family." After-tax income losses may be provided to the "victim"; however, there is no such provision for the "victim's family" members. "Victim" is statutorily defined as an "individual who suffers direct or threatened physical, financial, or emotional harm as a result of the commission of a crime." MCL 780.766(1); MSA 28.1287(766)(1). For purposes of this act, Michael Gravelle, not his father, was clearly the "victim" in this case. His father is therefore ineligible to recover wage loss. Accordingly, we remand this matter to the trial court for a determination of the amount of the restitution that constitutes the father's loss of income so that it can be subtracted from the total restitution ordered by the court.

Defendant further argues that he is entitled to correction of his presentence report. He claims that the trial court agreed to strike a reference in the presentence investigation report regarding his acquittal of an assault and battery charge but that

the information was not stricken. The prosecutor agrees with the trial court's indication that it would strike the reference and, consequently, does not oppose the defendant's request to correct the presentence investigation report. We agree and remand this matter for correction of the presentence investigation report. *People v Britt,* 202 Mich App 714, 718; 509 NW2d 914 (1993).

Affirmed with respect to defendant's conviction and sentence. We reverse and remand in accordance with this opinion with respect to the trial court's restitution order and for correction of the presentence investigation report. We do not retain jurisdiction.