# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TERRY LAMONT WILSON,

        Defendant-Appellant.

UNPUBLISHED
February 23, 2016

No.  323200
Macomb Circuit Court
LC No.  2013-002379-FC

Before:  RONAYNE KRAUSE, P.J., and SAWYER and STEPHENS, JJ.

PER CURIAM.

A jury convicted defendant of first-degree premeditated murder, MCL 750.316(1)(a), and possession of a firearm during the commission of a felony, MCL 750.227b.  The trial court sentenced defendant to life imprisonment without parole for the murder conviction, and a consecutive two-year term of imprisonment for the felony-firearm conviction.  Defendant appeals as of right.  We affirm.

Defendant's convictions arise from the May 15, 2013 shooting death of William Deon Clark at a park in Clinton Township.  There is no dispute that defendant shot and killed Clark, whom defendant had known all his life.  According to several witnesses, the shooting occurred during an argument, which involved accusations that defendant had previously stolen property from Clark's home.  When Clark's brother saw defendant at the park, the two began to argue and Clark eventually joined the escalating verbal confrontation.  Although Clark had entered his vehicle in preparation to leave the park, he left the vehicle and began approaching defendant, with the apparent purpose of fighting.  Defendant thereafter shot Clark once in the chest.

Defendant was charged with open murder.  The principal issues at trial concerned the circumstances surrounding the shooting and defendant's intent.  The trial court instructed the jury on first-degree premeditated murder, second-degree murder, and voluntary manslaughter. The court denied defendant's request for an instruction on self-defense.  The jury found defendant guilty of the higher charge of first-degree premeditated murder, in addition to felony-firearm.

-1-

## I. SELF-DEFENSE

Defendant first argues that the trial court erred in denying his request for a jury instruction on self-defense. When reviewing claims of instructional error, this Court reviews de novo questions of law, and reviews for an abuse of discretion the trial court's determination regarding whether a jury instruction applies to the facts of the case. *People v Dupree*, 486 Mich 693, 702; 788 NW2d 399 (2010). The trial court abuses its discretion when its decision falls outside the range of principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

"Jury instructions must clearly present the case and the applicable law to the jury." In *People v McGhee*, 268 Mich App 600, 606; 709 NW2d 595 (2005). "The instructions must include all elements of the charged offenses and any material issues, defenses, and theories if supported by the evidence." *Id.* "A defendant asserting an affirmative defense must produce some evidence on all elements of the defense before the trial court is required to instruct the jury regarding the affirmative defense." *People v Guajardo*, 300 Mich App 26, 34-35; 832 NW2d 409 (2013) (citation and footnote omitted); see also *Dupree*, 486 Mich at 709-710.

In *Guajardo*, this Court discussed the circumstances under which a person could claim lawful self-defense under the common law and under Michigan's Self-Defense Act (SDA), MCL 780.971 *et seq.*:

> Under the common law, the affirmative defense of self-defense justified the killing of another person if the defendant "'honestly and reasonably believes his life is in imminent danger or that there is a threat of serious bodily harm and that it is necessary to exercise deadly force to prevent such harm to himself.'" *Dupree*, 486 Mich at 707, quoting *People v Riddle*, 467 Mich 116, 127; 649 NW2d 30 (2002). In general, a defendant does not act in justifiable self-defense when he or she uses excessive force or when the defendant is the initial aggressor. *Id*.

> In 2006, the Legislature enacted the Self-Defense Act (SDA), MCL 780.971 *et seq*. Effective October 1, 2006, the SDA "codified the circumstances in which a person may use deadly force in self-defense or in defense of another person without having the duty to retreat." *Dupree*, 486 Mich at 708. Specifically, the SDA modified the common law's duty to retreat that was imposed on individuals who were attacked outside their own home or were not subjected to a "sudden, fierce, and violent" attack. *People v Conyer*, 281 Mich App 526, 530 n 2; 762 NW2d 198 (2008). However, the SDA continues to require that a person have an honest and reasonable belief that there is a danger of death, great bodily harm, or a sexual assault in order to justify the use of deadly force. MCL 780.972(1). [*Guajardo*, 300 Mich App at 35 (footnote omitted).]

MCL 780.972(1) provides:

> (1) An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another

individual anywhere he or she has the legal right to be with no duty to retreat if either of the following applies:

> (a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual.

> (b) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent sexual assault of himself or herself or of another individual.

Factors relevant to whether a person in a defendant's position could have an honest and reasonable fear of imminent death or serious bodily harm include: (1) the condition of the people involved, including their relative strength; (2) whether the other person was armed with a dangerous weapon or had some other means of injuring the defendant; (3) the nature of the other person's attack or threat; (4) whether the defendant knew about any previous violent acts or threats made by the other person. *People v Goree*, 296 Mich App 293, 296; 819 NW2d 82 (2012) (listing with approval the factors set forth in M Crim JI 7.15(4)).

In this case, the evidence showed that Clark was acting angrily as he approached defendant, and that defendant complained of having difficulty seeing because of an eye condition. Defendant did not express any fear of Clark because of a difference in size or strength, and instead attributed the source of his fear to the *potential* that Clark had a gun. It is undisputed, however, that Clark was not armed. In addition, defendant did not state that Clark took any action or made any gestures to suggest that he did. While defendant asserts that Clark was yelling, and "ran up" on him, based on defendant's testimony and that of the other witnesses, "ran up" equaled, at most, a "purposeful" walk. The mere fact that Clark was angry during the altercation would not give rise to a reasonable belief of imminent death or great bodily harm justifying the use of deadly force. In addition, testimony that Clark may have had previous access to a gun does not equate to a previous violent act that could make defendant reasonably believe that Clark presented a threat of death or great bodily harm. Because the evidence does not support a reasonable fear of death or great bodily harm, defendant was not privileged to use deadly force in return. *Guajardo*, 300 Mich App at 35. Therefore, the trial court did not abuse its discretion in denying the requested instruction on self-defense.

Defendant also argues that the trial court's failure to instruct on self-defense violated his constitutional due process right to present a defense. US Const, Am XIV; *People v Unger*, 278 Mich App 210, 249; 749 NW2d 272 (2008). In support of this argument, defendant relies on *People v Reese*, 491 Mich 127, 155; 815 NW2d 85 (2012), in which our Supreme Court stated that a defendant is entitled to a jury determination of "defenses or theories *if there is evidence to support them*." (Emphasis added.) Because the evidence did not support an instruction on self-defense, there was no due process violation.

## II. JUROR BIAS OR MISCONDUCT

Defendant next argues that the trial court erred in denying his motion for a new trial, which was based on allegations that one juror had posted comments concerning his jury service

on the juror's Facebook account, and that another juror had stated that she felt coerced into rendering a guilty verdict. We review a trial court's decision on a motion for a new trial for an abuse of discretion. See *People v Johnson*, 245 Mich App 243, 250; 631 NW2d 1 (2001).

We reject defendant's argument that a new trial is required because one of the jurors told defense counsel after the trial that she felt "rushed" by another juror to hurry up and reach a verdict. As explained in *People v Budzyn*, 456 Mich 77, 91; 566 NW2d 229 (1997):

> Generally, jurors may not impeach their own verdict by subsequent affidavits showing misconduct in the jury room. As the Court of Appeals has previously noted, once a jury has been polled and discharged, its members may not challenge mistakes or misconduct inherent in the verdict. Rather, oral testimony or affidavits may only be received on extraneous or outside errors, such as undue influence by outside parties. As the United States Supreme Court has explained, the distinction between an external influence and inherent misconduct is not based on the location of the wrong, e.g., distinguished on the basis whether the "irregularity" occurred inside or outside the jury room. Rather, the nature of the allegation determines whether the allegation is intrinsic to the jury's deliberative process or whether it is an outside or extraneous influence. In examining these affidavits, a trial court should not investigate their subjective content, but limit its factual inquiry to determining the extent to which the jurors saw or discussed the extrinsic evidence. [Citations omitted.]

Whether the juror in question may have felt pressured by another juror to reach a verdict was part of the deliberation process. Defendant cannot rely on this alleged pressure to impeach the jury's verdict. As the trial court noted, the jurors were individually polled after the verdict was announced and each juror stated that the verdict was his or her own decision. Thus, the trial court did not abuse its discretion in denying defendant's motion for a new trial with respect to that issue.

Defendant also argues that he is entitled to a new trial because a juror engaged in misconduct by posting comments about his jury service on his Facebook account during trial. According to the parties, the juror's friend stated that it was "cool" to be on a jury, and the juror replied that it was not cool, because the case involved a murder trial where "a young man is dead, another young man will be in prison for a long time, maybe." We disagree with defendant that this conversation constitutes an extraneous influence entitling him to a new trial. In *Budzyn*, 456 Mich at 88-89, our Supreme Court explained:

> In order to establish that the extrinsic influence was error requiring reversal, the defendant must initially prove two points. First, the defendant must prove that the jury was exposed to extraneous influences. Second, the defendant must establish that these extraneous influences created a real and substantial possibility that they could have affected the jury's verdict. [Citations omitted.]

To the extent that the Facebook conversation may be considered "extraneous" because it was not "intrinsic to the jury's deliberative process" and involved a matter that originated outside the trial, that alone does not entitle defendant to relief. Defendant must also establish that the

extraneous influence "created a real and substantial possibility that [it] could have affected the jury's verdict." *Id.* at 89. This generally requires a showing that "the extraneous influence is substantially related to a material aspect of the case and that there is a direct connection between the extrinsic material and the adverse verdict." *Id.* The only "extrinsic influence" demonstrated by the conversation is the comment from the juror's friend that the juror's jury service was "cool." The demonstrated effect this had on the juror was a response that showed that the juror was not caught up in the excitement of serving on a jury, but rather took his duties seriously because the case involved a death and the possibility of a lengthy prison sentence if the jury found the defendant guilty. Neither the friend's characterization of jury service as "cool," nor defendant's response demonstrates a real and substantial possibility that the brief conversation affected the jury's verdict. There is no connection between the conversation and either a material aspect of the case or the jury's verdict. Moreover, we disagree with defendant's assertion that the juror's reference to a possible "long" prison sentence is evidence that the juror performed independent research. As the trial court noted, the statement reflects nothing more than common knowledge that a murder conviction is likely to carry a lengthy prison sentence. The trial court did not abuse its discretion in finding that the juror's brief Facebook posting did not warrant a new trial.

## III. PROSECUTOR'S CONDUCT

Defendant next argues that the prosecutor's cross-examination of him at trial was improper and denied him a fair trial. Defendant concedes that there were no objections to the prosecutor's questions. Therefore, these claims of misconduct are unpreserved and our review is limited to plain error affecting defendant's substantial rights. *People v Gaines*, 306 Mich App 289, 308; 856 NW2d 222 (2014).

"[A]llegations of prosecutorial misconduct are considered on a case-by-case basis, and the reviewing court must consider the prosecutor's remarks in context." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). "A prosecutor's good-faith effort to admit evidence does not constitute misconduct." *People v Dobek*, 274 Mich App 58, 70; 732 NW2d 546 (2007).

Defendant argues that it was improper for the prosecutor to elicit on cross-examination that he had carried .40 caliber handguns in the past. Defendant fails to offer any argument addressing the admissibility of this evidence, or discuss the context in which it was presented. The record discloses that defendant testified, on direct examination, that he purchased the gun used to shoot Clark about a month earlier, because he had heard that Clark and his brothers wanted to "beat my ass, pistol whip me, et cetera." On cross-examination, the prosecutor elicited that defendant owned .40 caliber guns before and carried them around, but never previously shot anyone. Viewed in context, the prosecutor's questioning on cross-examination was responsive to defendant's direct examination testimony, and intended to refute defendant's suggestion on direct examination that he was carrying a gun only for protection from Clark and his brothers. Because the record supports a good-faith reason for the prosecutor's cross-examination on this subject, there was no plain error.

Defendant next argues that the prosecutor improperly asked him to comment on the credibility of Curtis Jemison, a prosecution witness. Defendant correctly observes that "[i]t is generally improper for a witness to comment or provide an opinion on the credibility of another

witness, because credibility matters are to be determined by the jury." *Dobek*, 274 Mich App at 71. The record discloses that it was defendant who initially claimed that his version of the events was consistent with "a lot" of the other witnesses, and who first offered that Jemison was lying after the prosecutor noted that Jemison's version differed from defendant's account. After defendant commented that "[h]e's lying about everything," the prosecutor asked, "He's lying about everything, but you're telling the truth?," to which defendant responded, "Right." "Under the doctrine of invited error, a party waives the right to seek appellate review when the party's own conduct directly causes the error." *People v McPherson*, 263 Mich App 124, 139; 687 NW2d 370 (2004). A "[d]efendant cannot complain of admission of testimony which defendant invited or instigated." *People v Whetstone*, 119 Mich App 546, 554; 326 NW2d 552 (1982). Because it was defendant who initially offered that "[h]e's lying about everything," defendant waived his claim that the prosecutor's request for clarification of defendant's statement was inappropriate. Furthermore, the trial court instructed the jury that "it is your job to decide what the facts of this case are, and you must decide which witnesses you believe." The court also instructed the jury that if testimony of different witness did not agree, "you must decide which testimony you accept." The trial court's instructions were sufficient to protect defendant's substantial rights.

Defendant also argues that the prosecutor improperly questioned him about his alleged lack of remorse concerning Clark's death, and whether he ever apologized to Clark's mother. This claim relates to the following exchange between the prosecutor and defendant:

> *Q*. You don't seem too remorseful that you shot a friend of yours, a guy that you grew up with and considered family.
>
> *A*. I am pretty remorseful.
>
> *Q*. Oh, really? Hurting on the inside?
>
> *A*. I am.

The prosecutor later asked defendant whether he had ever apologized to Clark's mother. Defendant stated that he had not had the chance, and attempted to do so while on the stand. During redirect examination, however, defendant stated that he had written to Clark's mother and apologized in the letter.

A defendant's conduct after a killing may be relevant to a determination of whether there was sufficient premeditation and deliberation to establish first-degree murder. *People v Paquette*, 214 Mich App 336, 342; 543 NW2d 342 (1995); *People v Schollaert*, 194 Mich App 158, 170; 486 NW2d 312 (1992). In *Paquette*, this Court held that the prosecutor did not commit misconduct by eliciting testimony regarding a defendant's lack of remorse during a police interview because such questioning was relevant to whether there was premeditation, and it did not improperly inject issues broader than the defendant's guilt or innocence. *Paquette*, 214 Mich App 342-343. Similarly, in this case, the prosecutor's questioning concerning defendant's remorse involved a relevant state of mind question. Thus, defendant has not established a plain error, particularly considering that defendant was permitted to provide his own explanation that he had written to Clark's mother to apologize for the shooting.

-6-

Because defendant has failed to establish that the prosecutor's conduct was improper, we reject his additional claim that defense counsel was ineffective for failing to object to the prosecutor's conduct. Counsel was not required to make futile objections. *People v Riley*, 468 Mich 135, 142; 659 NW2d 611 (2003); *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994).

Affirmed.

/s/ Amy Ronayne Krause
/s/ David H. Sawyer
/s/ Cynthia Diane Stephens