# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

EUGENE R. WILLIAMS,

      Defendant-Appellant.

UNPUBLISHED
September 15, 2016

No. 327488
Wayne Circuit Court
LC No. 14-009624-01-FH

Before: CAVANAGH, P.J., and SAAD and FORT HOOD, JJ.

PER CURIAM.

A jury convicted defendant of being a felon in possession of a firearm, MCL 750.224f, carrying a concealed weapon, MCL 750.227, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced to "straight" probation for his felon in possession of a firearm and carrying a concealed weapon convictions, and two years' imprisonment for his felony-firearm conviction. Defendant appeals, and we affirm.

At approximately 10:15 p.m. on October 21, 2014, officers Jeffrey Banks, William Zeolla, and Daniel Harnphanich were on patrol in the same vehicle in a neighborhood in Detroit, Michigan. As the officers were on Santa Maria Street, they heard multiple gunshots nearby. Zeolla then turned the vehicle onto Heyden Street where the officers observed defendant standing in front of a home located at 17187 Heyden, which was known to be vacant to the officers. As Zeolla pulled in front of the home, defendant walked through the front door and toward the back of the house. Banks testified that he then observed defendant remove a shiny object from his waistband. Zeolla and Harnphanich testified that they were able to identify the item as a silver handgun. Defendant then turned and walked into a bedroom on the first floor of the home.

As defendant entered the bedroom, the officers entered the home. Banks immediately encountered defendant in the hallway outside of the bedroom and detained him. After the officers swept the home for other individuals, Zeolla entered the bedroom and noticed the handle of a handgun sticking out beneath a pile of clothes on the floor. Zeolla confiscated the handgun, which was a silver, semi-automatic 9-mm firearm. At trial, the parties stipulated that defendant had previously been convicted of a felony and had not had his right to possess a firearm restored on October 21, 2014.

## I. JUDICIAL BIAS

-1-

Defendant argues that the trial court displayed judicial bias when it made a comment regarding law enforcement to the venire just prior to jury selection. We disagree.

In order to preserve the issue of judicial bias, the defendant must object to the trial court's conduct at trial. *People v Paquette*, 214 Mich App 336, 340; 543 NW2d 342 (1995). When the trial court made the contested remarks, counsel for defendant did not object. Therefore, this issue is not preserved. This Court reviews unpreserved issues for plain error affecting a defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). In order to avoid forfeiture of the issue, (1) error must have occurred (2) the error must have been plain, i.e., clear or obvious and (3) the plain error affected the defendant's substantial rights. *Id*. (citation omitted). This third requirement is satisfied if the defendant can demonstrate prejudice, i.e., that the error affected the outcome of the lower court proceedings. *Id*. Additionally, if the defendant satisfies these three requirements, this Court will only grant reversal when the plain error resulted in the conviction of an innocent defendant or "seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id*. at 763-764.

A criminal defendant is entitled to a "neutral and detached magistrate." *People v Cheeks*, 216 Mich App 470, 480; 549 NW2d 584 (1996) (quotation marks and citation omitted). "A defendant claiming judicial bias must overcome a heavy presumption of judicial impartiality." *People v Jackson*, 292 Mich App 583, 598; 808 NW2d 541 (2011) (quotation marks and citation omitted). "If the trial court's conduct pierces the veil of judicial impartiality, a defendant's conviction must be reversed." *Id*. (question marks and citation omitted). "A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *People v Stevens*, 498 Mich 162, 171; 869 NW2d 233 (2015). The circumstances to consider include "the nature of the judicial conduct, the tone and demeanor of the trial judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions." *Id*. at 172.

Just prior to jury selection, the trial court introduced its staff to the venire. As the trial court was introducing its deputy, the court stated, "[T]hey do a fantastic job. I know all this stuff about the police with this that and the other thing, but without them the criminals would be running wild so they do a great job." A review of the record demonstrates that the trial court was simply attempting to compliment its deputy and to clear up what the court believed to be misconceptions regarding police in general. While the comment was unnecessary given the setting, it cannot be said that it pierced the veil of judicial impartiality. *Jackson*, 292 Mich App at 598. The nature and tone of the remark seemed to be lighthearted, and the remark was very brief considering it was an isolated statement during the course of a two-day trial. Although the conduct complimented police in general, it did not comment on the conduct of the officers in this case or whether they could be considered credible witnesses.

Notably, the trial court did provide a curative instruction. As the trial court was giving its jury instructions, it stated that "my comments, rulings, and instructions are . . . not evidence." The court also stated that "when I make a comment or give an instruction, I am not trying to influence your vote or express a personal opinion about the case. If you believe that I have an

opinion about how you should decide the case, you must pay no attention to that opinion." The court further instructed that testimony from police officers "is to be judged by the same standard that you use to evaluate the testimony of any other witness." It is well established that "[j]urors are presumed to follow their instructions, and it is presumed that instructions cure most errors." *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011). Therefore, we hold that the trial court's remark did not impermissibly taint the proceedings and that defendant is not entitled to a new trial.

## II.  INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that he was denied the effective assistance of counsel. We disagree.

The ultimate constitutional issue arising from an ineffective assistance of counsel claim is reviewed de novo. *People v LeBlanc*, 465 Mich 575, 582; 640 NW2d 246 (2002). Any findings of fact are reviewed for clear error. *Id*. at 583. But because no evidentiary hearing was held, our review is for errors apparent from the record. *People v Mack*, 265 Mich App 122, 125; 695 NW2d 342 (2005).

In order to prevail on an ineffective assistance of counsel claim, "a defendant must show that counsel's performance fell below an objective standard of reasonableness, and that the representation so prejudiced the defendant as to deprive him of a fair trial." *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v Washington*, 466 US 668, 689; 104 S Ct 2052; 80 L Ed 2d 674 (1984). In order for the defendant to satisfy the prejudice prong of the analysis, "a court must conclude that there is 'a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.' " *Pickens*, 446 Mich at 312, quoting *Strickland*, 466 US at 695.

## A.  FAILURE TO FILE A MOTION IN LIMINE

Defendant claims that the performance of his trial counsel was deficient where counsel failed to timely file a motion in limine to exclude testimony regarding a prior narcotics raid at 17187 Heyden. We disagree.

At the preliminary examination (and at trial), there was testimony that the officers were familiar with 17187 Heyden because they had conducted a raid on the house several weeks earlier. Just before jury selection began, defense counsel made an oral motion in limine to exclude this testimony at trial. The prosecution argued that the testimony provided context regarding how the officers were familiar with the home. The prosecution also argued that the testimony was relevant because guns are often used to protect narcotics. The trial court noted that the deadline for such motions had passed and that the motion should have been filed earlier so the court could have held a hearing. The court then denied the motion based on the fact that the evidence explained how the officers knew of the home initially. The court also acknowledged that the testimony was prejudicial but implied that is was not unfairly prejudicial under MRE 403.

Here, defendant has not shown how counsel's failure to make the motion earlier would have resulted in a different ruling by the trial court, let alone a different verdict from the jury. On appeal, defendant relies on the belief that the evidence was inadmissible under MRE 403 because it was unduly prejudicial. But the trial court, without expressly citing to MRE 403, implicitly found that the evidence was not unduly prejudicial under this court rule. Hence, defendant has failed to show how, assuming counsel's performance was deficient due to the failure to file the motion earlier, the result of the proceeding would have been any different had counsel timely filed the motion. Moreover, assuming arguendo that counsel's performance was deficient and that the trial court would have granted a timely motion in limine, thereby preventing the jury from hearing about the prior drug raid at the house, defendant has not shown that there was a reasonable likelihood that the outcome of the proceeding would have been different. Here, police officers testified consistently that defendant had an object that looked like a silver gun in his hand and one of the officers, in fact, found a silver handgun in the bedroom in which defendant entered. Accordingly, the jury still would have convicted defendant for the handgun offenses, regardless of the jury's awareness that the house was the site of a previous narcotics raid, and defendant cannot sustain his claim of ineffective assistance.[1]

## B. FAILURE TO REQUEST TESTING

Defendant argues that the performance of his trial counsel was deficient where counsel failed to request gunshot residue testing or fingerprint testing for the weapon. Defendant claims that because Zeolla testified that the gun in question smelled like it had recently been fired, defendant's hands and clothes should have been tested for gunshot residue in order to prove that he never fired, and thus never possessed, the gun. This Court has held that decisions regarding what evidence to present, and how to argue the case, are matters of trial strategy. *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). While counsel did fail to request gunshot residue testing, she did impeach the officers regarding their failure to conduct the test or to search for shell casings. On cross-examination, counsel asked Zeolla, "did you have Mr. Williams tested for gunshot residue?" After Zeolla responded that he did not, counsel questioned Zeolla regarding his failure to search for shell casings despite the fact that the gun in question dispenses shell casings.

More importantly, counsel's failure to request the testing on her own was likely strategic. The record is silent regarding what such tests would reveal. This fact alone precludes defendant from obtaining any relief on this issue. See *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999) (stating that a defendant must establish the factual predicate for his claim of ineffective assistance). Regardless, two eyewitnesses, Zeolla and Harnphanich, testified that they observed defendant remove the weapon from his waistband, while Banks testified that he observed defendant remove a shiny object. Zeolla also testified that when he retrieved the gun, he thought is smelled like it had recently been discharged. Counsel could have surmised that if testing was accomplished, there was a strong likelihood that it would have been damning for defendant; and

---

[1] For the same reason, defendant's alternate claim that the trial court erred when it admitted the evidence fails because any error ultimately would be harmless.

-4-

in that instance, no amount of impeaching of the witnesses would have been successful. Therefore, it cannot be said that counsel's failure to request testing for gunshot residue or fingerprints "fell below an objective standard of reasonableness." *Pickens*, 446 Mich at 338.

## C. FAILURE TO HIRE INVESTIGATOR

Defendant cursorily avers that the performance of his trial counsel was deficient where counsel failed to request an investigator to examine the lighting conditions at 17187 Heyden. Once again, decisions regarding what evidence to present are matters of trial strategy. *Rockey*, 237 Mich App at 76. However, defendant does not explain what such an investigation would have revealed, which is fatal to defendant's claim. See *Hoag*, 460 Mich at 6. For us to grant defendant the relief he seeks, we would have to speculate that an investigation would have uncovered "something" that would have cast grave doubt as to the ability of the officers to see into a lit house during the evening hours. We decline to do so.[2] Thus, it is impossible for defendant to show how counsel's failure to have an expert conduct an investigation affected the trial in any manner, and his claim of ineffective assistance necessarily fails.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Henry William Saad
/s/ Karen M. Fort Hood

---

[2] Moreover, defendant's contention that the officers "could not have seen what they purported to see from the vantage point that they had in the dark" misses the mark. While the officers may have been in the dark street, they were looking *into a house that was illuminated from the inside*. The record shows that this is not an instance where the officers were looking into an unilluminated area. Additionally, the state of the illumination is somewhat irrelevant when the officers went inside the home and saw, in close proximity, defendant exit the room from which they later discovered the gun.