*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DARIEN RAY GILLEYLEN,

        Defendant-Appellant.

UNPUBLISHED
April 11, 2024

No. 363135
Kalamazoo Circuit Court
LC No. 2019-001192-FC

Before: BOONSTRA, P.J., and FEENEY and YOUNG, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of manslaughter, MCL 750.321; and possession of a firearm during the commission of a felony (felon-firearm), MCL 750.227b(1). The trial court sentenced defendant to 72 months to 15 years in prison for the manslaughter conviction, to be served after a two-year term of imprisonment for the felony-firearm conviction, with credit for two years served. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case arises out of the shooting death of Shequita Lewis on July 15, 2019 in Kalamazoo. Defendant and Lewis had two children together, a twin boy and girl who were fourteen years old when the crime occurred. Both children testified that defendant and Lewis were never together as a couple while the children were growing up, and that defendant had lived in Georgia for several years during their childhood. When defendant returned to Michigan, he lived with his parents in a house on Church Street, while the children lived with Lewis at an apartment complex and sometimes stayed with defendant and his parents on weekends and on school breaks. The children testified that defendant and Lewis had a contentious relationship and that they often argued, but that the couple had never had a physical altercation in front of them before the day of the shooting.

On July 14, 2019, defendant failed to pick up his son from Lewis's apartment to take him to the Church Street house so that he could attend summer school the next morning. At that time, Lewis and her daughter were at an overnight birthday party. Defendant did not pick up his son until mid-morning on July 15, and, because he was already late for summer school, defendant

-1-

instead took his son to the Church Street house. Defendant's daughter testified that Lewis was angry with defendant for failing to pick up her brother, but that Lewis was also angry because defendant had repeatedly called and texted Lewis during the birthday party. After the party ended on July 15, Lewis drove to the Church Street house to pick up her son. Lewis left the car running with her daughter and two other children inside and went into the house. Defendant was upstairs with his son when Lewis arrived. According to the son, defendant and Lewis began to yell at each other about defendant's failure to take him to summer school. Because Lewis told him to get ready to leave, he went to the kitchen to put on his shoes as defendant and Lewis continued to argue.

The argument between defendant and Lewis continued into the living room and near the threshold of the kitchen, and, at one point, defendant and Lewis began to physically fight. Their son testified that defendant jumped toward Lewis and, in response, Lewis punched defendant. At one point, Lewis told her son to get her sister from the car, and he did so. When he went to get her from the car, his sister recalled that her brother looked frantic, and they hurried into the house. The testimonies of the children differed about some of the events inside the house, but both children testified that defendant and Lewis were yelling and cursing at each other, that they were wrestling and hitting each other, that defendant yelled at Lewis to get out of his house, and that Lewis broke a television in the living room. Defendant's daughter testified that, as she and her brother were standing in the kitchen, Lewis tried to get into the kitchen, but defendant blocked the door. Lewis told her daughter to grab a knife for her, but she did not do so. Instead, Lewis was able to get past defendant and get into the kitchen where she grabbed a knife from a dish-drying rack.

Defendant and Lewis struggled over the knife, and defendant sustained cuts to his hands. Lewis wrestled defendant to the floor, and she held the knife to his neck. Their daughter testified that she believed that Lewis needed a knife because she was physically in danger, and their son testified that, as Lewis held the knife toward defendant, she told him not to put his hands on her again. Both children testified that Lewis said that she would kill defendant as she held the knife to his neck. A short time later, Lewis dropped or threw the knife down, and defendant stood up and walked out of the kitchen into the next room, which the children called "the computer room."

Testimony differed about how long defendant was out of the kitchen before he returned. Their son agreed that defendant was gone for a "few seconds," and their daughter stated that defendant was gone for between 30 seconds to a minute and a half. While in the computer room, defendant retrieved a nine-millimeter pistol from a filing cabinet. Defendant returned to the kitchen and shot Lewis in the chest. Defendant then walked out of the room as the children hurried to help their mother. The daughter called 911 as the son put pressure on Lewis's wound. When police arrived, Lewis's daughter was holding a rag on Lewis's injury, and they took over efforts to resuscitate Lewis. Despite those efforts, Lewis died of the gunshot wound.

Defendant was arrested and charged with open murder. At trial, defendant's theory of the case was that he had acted in self-defense. Prior to trial, defendant moved the trial court to allow the jury to travel to the Church Street house and view the crime scene, arguing that the jury would need to view the house themselves to understand the close quarters involved in the incident. The trial court denied the motion. At the close of the prosecution's proofs, defendant moved for a directed verdict, arguing that the prosecution had failed to present sufficient evidence that defendant had not acted in self-defense. The trial court denied the motion. After both parties had

rested, defendant objected to the jury being instructed on voluntary manslaughter as well as murder. The trial court held that the manslaughter instruction was supported by the evidence, but that the jury would be also instructed regarding self-defense for both murder and manslaughter.

Defendant was convicted as described. After his conviction, he moved the trial court for a judgment notwithstanding the verdict (JNOV) or a new trial, arguing that the jury verdict was against the great weight of the evidence. The trial court denied that motion. This appeal followed.

## II. JURY VIEW OF THE CRIME SCENE

Defendant argues that the trial court erred by denying his request for the jury to view the Church Street house. We disagree. We review for an abuse of discretion a trial court's decision on a request for a jury view of the crime scene. *People v Herndon*, 246 Mich App 371, 418-419; 633 NW2d 376 (2001). "The trial court abuses its discretion when its outcome falls outside the range of principled outcomes." *People v Armstrong*, 305 Mich App 230, 239; 851 NW2d 856 (2014).

MCL 768.28 provides that "[t]he court may order a view by any jury empaneled to try a criminal case, whenever such court shall deem such view necessary." Further, MCR 2.513(J) provides, in relevant part, that "[o]n motion of either party, on its own initiative, or at the request of the jury, the court may order a jury view of property or of a place where a material event occurred."

In this case, the trial court admitted dozens of photographs of the crime scene, videos of experiments by the defense recreating defendant's and Lewis's movements, floor plans of the ground floor of the house with written dimensions, a floor plan of the computer room with dimensions and markings where evidence was found, and a body cam video of an officer entering the home and walking to the crime scene. Many of the photographs and the diagrams were projected onto a screen during trial, and witnesses gave detailed explanations about the scene as well as distances between points.

Although defendant argues that it was necessary for the jury to view the crime scene to feel how small the areas in the house felt in person, there was ample evidence of the size and dimensions of the crime scene through photos, diagrams, videos, and descriptions. Further, although defendant argues that the trial court's decision prevented him from being able to adequately present his defense of self-defense, a jury view would not have aided the jury in making that determination. Defendant showed videos of how fast a person could walk or run to get a gun from the computer room to retrieve a gun and return to the kitchen, and how fast a person could retrieve a knife from the kitchen. The evidence presented showed that defendant left the kitchen for between a few seconds and a minute and a half before he returned to shoot Lewis. Defendant does not explain how an in-person view of the scene would have given additional information to the jury, apart from the "feeling" of closeness.

Further, it was undisputed that the kitchen had knives within easy reach. However, the two eyewitnesses, defendant's children, both testified that Lewis dropped the knife that she had and never reached for another. Further, defendant's son testified that he thought that the fight was over when defendant was in the computer room, and he, his sister, and Lewis were getting ready to

leave the house when defendant came back with the gun to shoot Lewis. In other words, defendant has not demonstrated that his theory of self-defense failed because the jury lacked an understanding that the rooms were small and close together. Rather, a reasonable inference from the evidence is that the jury concluded that defendant did not honestly believe that Lewis continued to pose a threat to his life after she dropped the knife, and that he was able to leave the kitchen, Lewis did not follow him, there was no further yelling or fighting, and the witnesses believed that the fight was over. On the facts of this case, the trial court did not abuse its discretion when it denied defendant's motion for a jury view of the crime scene. See *Armstrong*, 305 Mich App at 239.

## III. MANSLAUGHTER INSTRUCTION

Defendant argues that the trial court abused its discretion by giving the jury an instruction on manslaughter. We disagree. We review de novo legal claims of instructional error, and we review for an abuse of discretion the trial court's determination that a jury instruction was supported by the evidence. *People v Jones*, 497 Mich 155, 161; 860 NW2d 112 (2014).

"Jury instructions are read in their entirety to determine if error occurred requiring reversal." *People v Paquette*, 214 Mich App 336, 339; 543 NW2d 342 (1995). MCL 768.32(1) provides that,

> upon an indictment for an offense, consisting of different degrees, as prescribed in this chapter, the jury, or the judge in a trial without a jury, may find the accused not guilty of the offense in the degree charged in the indictment and may find the accused person guilty of a degree of that offense inferior to that charged in the indictment, or of an attempt to commit that offense.

Manslaughter is an inferior, and therefore a necessarily included lesser offense, of murder. *People v Mendoza*, 468 Mich 527, 540; 664 NW2d 685 (2003). For that reason, "when a defendant is charged with murder, an instruction for voluntary . . . manslaughter must be given if supported by a rational view of the evidence." *Id*. at 541. A rational view of the evidence means that the element differentiating the crimes must be sufficiently in dispute so that a jury may find the defendant not guilty of the greater offense but guilty of the lesser offense. *People v Cornell*, 466 Mich 335, 352; 646 NW2d 127 (2002).

To establish a claim of voluntary manslaughter, the prosecution "must show that the defendant killed in the heat of passion, the passion was caused by adequate provocation, and there was not a lapse of time during which a reasonable person could control his passions." *Mendoza*, 468 Mich at 535. By comparison, the elements of first-degree murder are "(1) the intentional killing of a human (2) with premeditation and deliberation." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). Intent to kill, premeditation and deliberation may be inferred from all the facts and circumstances of the case. *People v Cameron*, 291 Mich App 599, 615; 806 NW2d 371 (2011); see also *People v Unger*, 278 Mich App 219, 229; 749 NW2d 272 (2008).

In this case, there was a dispute about whether defendant acted with premeditation and deliberation when he shot Lewis and whether there was sufficient provocation and heat of passion to negate the element of malice. See *Mendoza*, 468 Mich at 540. Defendant's children testified that defendant and Lewis argued and engaged in a physical fight before the shooting. It appeared

that Lewis gained control over defendant when she grabbed a knife and forced him to the floor in the kitchen. Defendant's son agreed that, after Lewis dropped the knife and stood up to allow defendant to stand up in the kitchen, defendant left the room for a few seconds and then returned to the kitchen and shot Lewis in the chest. Defendant's daughter testified that defendant left the kitchen for between 30 seconds and a minute and a half before he returned and shot Lewis. The children agreed that, after Lewis dropped the knife and defendant got up from the floor, no one said anything. Lewis did not follow defendant to continue the argument, and the children believed that the fight was over. The difference in the length of time between "a few seconds" and a minute and a half was significant enough for the jury to conclude that, depending on which witness the jury believed, defendant had sufficient time to take a second look before using deadly force against Lewis. Alternatively, evidence showed that defendant and Lewis physically fought in the living room and then fought over the knife in the kitchen, where Lewis forced defendant onto the floor and threatened to kill him before she threw down the knife. If defendant then ran and retrieved the gun within a "few seconds," a reasonable jury could conclude that defendant acted with passion or hot blood when he shot Lewis in the chest. Therefore, the evidence was sufficient to support either a murder or a manslaughter verdict, and both jury instructions were supported by a rational view of the evidence. *Jones*, 497 Mich at 161.

Defendant argues on appeal that the evidence shows that he acted intentionally when he shot Lewis, but that he shot her in self-defense because he believed that his life was in danger. Defendant maintains that this is inconsistent with charge of voluntary manslaughter. However, after the prosecution rested its case, defendant argued that a reasonable juror could not conclude that defendant shot Lewis with premeditation or deliberation because evidence clearly showed defendant acted in the heat of the moment. A party may not take one position in the trial court and then seek relief on the basis of a contrary position on appeal. *People v Carter*, 462 Mich 206, 214-215; 612 NW2d 144 (2000); *Czymbor's Timber, Inc v Saginaw*, 269 Mich App 551, 556; 711 NW2d 442 (2006). Further, the trial court protected defendant's claim of self-defense by making sure that the jury knew that self-defense is also a defense to voluntary manslaughter.

For these reasons, the trial court's instruction on voluntary manslaughter was legally correct because it is a necessarily included lesser offense of murder, and the trial court did not abuse its discretion by giving the instruction because it was supported by a rational view of the evidence. *Jones*, 497 Mich at 161.

IV. REBUTTABLE PRESUMPTION JURY INSTRUCTION

Defendant also argues that he was entitled to a jury instruction, M Crim JI 7.16a, stating that it was presumed that he had an honest and reasonable belief that imminent death or great bodily harm would occur when he shot Lewis. We disagree.

M Crim JI 7.16a was drafted to comply with MCL 780.951, which provides, in relevant part:

> (1) Except as provided in subsection (2), it is a rebuttable presumption in a civil or criminal case that an individual who uses deadly force or force other than deadly force under section 2 of the self-defense act1 has an honest and reasonable

belief that imminent death of, sexual assault of, or great bodily harm to himself or herself or another individual will occur if both of the following apply:

>        (a) The individual against whom deadly force or force other than deadly force is used is in the process of breaking and entering a dwelling or business premises or committing home invasion or has broken and entered a dwelling or business premises or committed home invasion and is still present in the dwelling or business premises, or is unlawfully attempting to remove another individual from a dwelling, business premises, or occupied vehicle against his or her will.

>        (b) The individual using deadly force or force other than deadly force honestly and reasonably believes that the individual is engaging in conduct described in subdivision (a).

Jury instructions "must include all the elements of the crime charged, and must not exclude from jury consideration material issues, defenses or theories if there is evidence to support them." *People v Armstrong*, 305 Mich App 230, 240; 851 NW2d 856 (2014) (quotation marks and citation omitted). Even jury instructions that are imperfect are not in error if they fairly present the issues to be tried and sufficiently protect the defendant's rights. *People v Clark*, 274 Mich App 248, 255-256; 732 NW2d 605 (2007). An error in instructing the jury is not grounds for reversal "unless refusal to take action appears to the court inconsistent with substantial justice." MCR 2.613(A).

We hold that the facts of this case did not support an instruction regarding the rebuttable presumption under M Crim JI 7.16a. The plain language of the statute from which M Crim JI 7.16a was derived, MCL 780.951, states that the presumption applies only when deadly force is used against a person who

> is in the process of breaking and entering a dwelling or business premises or committing home invasion or has broken and entered a dwelling or business premises or committed home invasion and is still present in the dwelling or business premises, or is unlawfully attempting to remove another individual from a dwelling, business premises, or occupied vehicle against his or her will.

Although defendant asserts that Lewis either "barged" into the Church Street house uninvited or otherwise entered the home unlawfully, no evidence in the record supports that assertion. None of the witnesses testified about how Lewis entered the home, just that she was in the house when her son heard her call for him to come down and get ready to leave. At that time, Lewis was already in the house and talking to defendant. Further, defendant's daughter testified that Lewis entered the house intending to pick up her son and take him to summer school. No evidence was presented that Lewis was in the process of breaking and entering or committing a home invasion when she was shot. Therefore, MCL 780.951 did not apply and M Crim JI 7.16a was not supported by the evidence. *Jones*, 497 Mich at 161.

### V. MOTIONS FOR DIRECTED VERDICT, JNOV, OR NEW TRIAL

Defendant argues that the trial court should have granted his motions for a directed verdict both during and after trial because the prosecution failed to disprove his theory of self-defense

beyond a reasonable doubt. Defendant also argues that the trial court erred by denying his motion for a new trial. We disagree.

> When reviewing a trial court's decision on a motion for a directed verdict, this Court reviews the record de novo to determine whether the evidence presented by the prosecutor, viewed in the light most favorable to the prosecutor, could persuade a rational trier of fact that the essential elements of the crime charged were proved beyond a reasonable doubt. [*People v Aldrich*, 246 Mich App 101, 122; 631 NW2d 67 (2001).]

Self-defense may justify the use of deadly force "if the defendant honestly and reasonably believes his life is in imminent danger or that there is a threat of serious bodily harm and that it is necessary to exercise deadly force to prevent such harm to himself." *People v Dupree* 486 Mich 693, 707; 788 NW2d 399 (2010) (quotation marks and citation omitted). In this case, although defendant notes that the trial court acknowledged that defendant presented "some evidence" of self-defense and argues that this should have resulted in a directed verdict in his favor, that is not the legal standard. If a defendant presents evidence supporting each element of the defense of self-defense, the prosecution must disprove self-defense beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 155; 815 NW2d 85 (2012). In other words, the fact that defendant presented evidence of self-defense does not end the inquiry.

Defendant asserts on appeal that Lewis not only broke into the house or otherwise entered it illegally, but that she also began to punch defendant without provocation and attacked defendant with a knife for no reason. These assertions are not supported by the record. Again, no evidence showed that Lewis entered the house without permission. Defendant's son testified that Lewis hit defendant only after he jumped at her during their argument. Further, defendant's son repeatedly testified that both parties participated the physical altercation before the shooting. During the fight, both defendant and Lewis were yelling and swearing at each other. Defendant yelled at Lewis to get out of his house, and Lewis responded by smashing a television. Defendant's daughter testified that she and her brother were in the kitchen when defendant and Lewis were fighting and that defendant stood in the doorway to block Lewis from going into the kitchen. According to defendant's daughter, Lewis told her to get her a knife, and, at that point, the daughter had the impression that Lewis needed a knife to protect herself. Lewis was able to get past defendant and into the kitchen, where she took a knife from a dish rack, at which point she and defendant fought over control of the knife.

Ultimately, Lewis was able to get defendant onto the floor—either sitting or on his knees—and she held the knife to his neck and said that she would kill him. Although Lewis held the only weapon at that point, she threw or put down the knife and stood up. Defendant then stood up and walked to the computer room. Although defendant was not required to retreat before defending himself, defendant did leave the kitchen, after Lewis dropped the knife, and went to a place of safety in another room of the house where he had access to a firearm. No evidence showed that Lewis tried to follow defendant or continued to threaten him. Rather, the children testified that, after Lewis dropped the knife, it was silent, and defendant's son testified that he thought the fight was over and they were getting ready to leave the house. As discussed, defendant returned to the kitchen either a few seconds or up to a minute and a half later and shot Lewis in the chest. At the

point that defendant chose to use deadly force on Lewis, a rational jury could have concluded beyond a reasonable doubt that defendant did not honestly and reasonably believe that he was in imminent danger of death or great bodily harm. Lewis was unarmed, the fight had ended, and defendant was not in any imminent danger. Accordingly, the prosecution disproved defendant's claim of self-defense beyond a reasonable doubt. *Reese*, 491 Mich at 155.

Defendant also argues that the manslaughter verdict was against the great weight of the evidence, and that he is therefore entitled to a new trial. We disagree.

We review for an abuse of discretion a trial court's decision that the verdict was not against the great weight of the evidence. *Unger*, 278 Mich App at 232. "A trial court may grant a motion for a new trial based on the great weight of the evidence only if the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *Id*. A verdict is against the great weight of the evidence "only when the evidence does not reasonably support it and it was more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence." *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009).

In this case, there was ample evidence to support the jury's verdict of manslaughter. As discussed, defendant shot Lewis after they yelled at each other; they engaged in a physical altercation; and Lewis grabbed a knife, which they fought over until Lewis was able to force defendant to the kitchen floor. Lewis dropped or threw down the knife without using it to harm defendant, which allowed him to get up and walk out of the kitchen. A reasonable jury could conclude that defendant, while in the heat of passion, ran to the computer room to grab the gun and shot Lewis because of their violent altercation in which she had gained the upper hand and threatened him with a knife. *Mendoza*, 468 Mich at 535.

Affirmed.

/s/ Mark T. Boonstra
/s/ Kathleen A. Feeney
/s/ Adrienne N. Young