# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

LEOPOLD WITHMORE-VANS ALLEN, JR.,

        Defendant-Appellant.

UNPUBLISHED
March 13, 2018

No. 335885
Kent Circuit Court
LC No. 16-000965-FH

Before: O'CONNELL, P.J., and HOEKSTRA and SWARTZLE, JJ.

PER CURIAM.

Defendant, Leopold Withmore-Vans Allen, Jr., appeals by right his jury trial convictions of larceny from the person, MCL 750.357, and two counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(e) (weapon used) and MCL 750.520b(1)(f) (personal injury). The trial court sentenced Allen as a fourth-offense habitual offender, MCL 769.12, to 2 to 10 years' imprisonment for larceny from the person and 20 to 40 years' imprisonment for each of the CSC-I convictions. We affirm Allen's convictions and prison sentences and remand for the trial court to establish a factual basis for the imposition of $400 in court costs.

## I. BACKGROUND

Allen's convictions arose out of the sexual assault of his former girlfriend, JH. At the time of the assault, JH was approximately 26 weeks pregnant with Allen's child. At trial, JH testified that Allen entered her home late in the evening on January 3, 2016, when she was asleep. JH awoke to Allen standing in her bedroom and rummaging through her belongings. Allen took a can of mace from JH's keychain. He pinned JH to the bed. He shook the can of mace, pointed it at her face, and threatened to spray her with the mace if she did not tell him what she had been doing, suggesting that she was cheating on him even though JH ended the relationship. Allen tried to force JH to perform fellatio on him, but JH refused. Allen forcibly removed JH's clothing, performed cunnilingus on her, and penetrated her vagina with his penis. JH's roommate called the police after the assault, and the police took JH to the YWCA for an examination by a sexual assault nurse examiner. JH was then transferred to Spectrum Butterworth Hospital, where she was admitted and stayed for two days.

## II. ANALYSIS

### A. HEARSAY EVIDENCE

Allen argues that the trial court erred when it admitted statements that JH made to YWCA Sexual Assault Nurse Examiner Cheryl Klinkner, to triage personnel at the hospital, and to Dr. Robert Bowes, a treating physician. "This Court reviews a trial court's evidentiary ruling for an abuse of discretion." *People v Benton*, 294 Mich App 191, 195; 817 NW2d 599 (2011). "A trial court abuses its discretion when it chooses an outcome that falls outside the range of principled outcomes." *People v Musser*, 494 Mich 337, 348; 835 NW2d 319 (2013). Allen did not preserve this evidentiary challenge, so we review it for plain error affecting his substantial rights. See *People v Ackerman*, 257 Mich App 434, 446; 669 NW2d 818 (2003).

Allen argues that the excerpts of the medical records contained statements that were not necessary for medical treatment or medical diagnosis and were, therefore, inadmissible hearsay. Hearsay is generally inadmissible. MRE 802. MRE 803(4) provides an exception to this rule:

> Statements made for purposes of medical treatment or medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably necessary to such diagnosis and treatment.

MRE 803(4) applies

> irrespective of whether the declarant sustained any immediately apparent physical injury. Particularly in cases of sexual assault, in which the injuries might be latent, such as contracting sexually transmitted diseases or psychological in nature, and thus not necessarily physically manifested at all, *a victim's complete history and a recitation of the totality of the circumstances of the assault are properly considered to be statements made for medical treatment.* [*People v Mahone*, 294 Mich App 208, 215; 816 NW2d 436 (2011) (emphasis added).]

In this case, the statements JH made to Klinkner and Dr. Bowes were admissible under MRE 803(4). The statements JH made to Klinkner were necessary because they guided the treatment and follow-up that Klinkner provided. Klinkner testified that part of the sexual assault examination included an interview during which JH described her medical history and described the sexual assault in detail. Klinkner explained that JH's statements helped "guide" her examination. JH's identification of Allen and her explanation of how the assault occurred were relevant to the source of JH's potential injuries, including potential psychological issues. Klinkner needed this information to treat and diagnose JH.

Similarly, the statements JH made to triage personnel and to Dr. Bowes were for the purposes of medical diagnosis and treatment. Before deciding the proper course of treatment, Dr. Bowes explained that he reviewed the medical notes prepared by triage personnel. In the notes, JH informed medical personnel, including Dr. Bowes, that the father of her baby sexually assaulted her. Dr. Bowes then talked to JH before providing treatment. JH's description of the circumstances surrounding the assault was important because it helped the medical professionals decide the most appropriate course of treatment for JH.

Moreover, JH's statements concerning how Allen appeared at her bedside in the night, took her personal belongings, and sexually assaulted her were relevant to her medical treatment and diagnosis. The identity of the perpetrator and the manner in which the assault was perpetrated were necessary to determine if JH required mental health treatment and were properly admitted under MRE 803(4) as part of the complete history of the assault.

In sum, the trial court did not err by admitting testimony from Klinkner and Dr. Bowes concerning the statements that JH made to them during the course of the sexual assault examination and her subsequent hospital treatment. JH made the statements for the purposes of medical diagnosis or treatment, and the statements described medical history, past or present symptoms, and related to the "general character of the cause or external source" of JH's injuries. See MRE 803(4). Accordingly, the statements were admissible under MRE 803(4).

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Allen argues that defense counsel rendered ineffective assistance at trial. Whether a defendant was denied the effective assistance of counsel presents a mixed question of fact and constitutional law. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). We review a trial court's findings of fact for clear error and constitutional issues de novo. *Id*. In the absence of an evidentiary hearing, as in this case, this Court's review is limited to mistakes apparent on the record. See *People v Horn*, 279 Mich App 31, 38; 755 NW2d 212 (2008). To establish ineffective assistance of counsel, a defendant must show (1) that counsel rendered assistance that "fell below an objective standard of reasonableness[,]" and (2) a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . ." *People v Toma*, 462 Mich 281, 302-303; 613 NW2d 694 (2000) (quotation marks and citation omitted).

Allen argues that defense counsel was ineffective for failing to object to the admission of the statements JH made to medical personnel. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). As previously discussed, these statements were admissible under MRE 803(4). Therefore, counsel was not deficient by failing to raise an objection to their admission.

Allen further argues that defense counsel was ineffective during voir dire by failing to challenge for cause a juror who stated that his daughter was previously the victim of a similar crime. "Jurors are presumptively competent and impartial, and the party alleging the disqualification bears the burden of proving its existence." *People v Johnson*, 245 Mich App 243, 256; 631 NW2d 1 (2001). "It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Irvin v Dowd*, 366 US 717, 723; 81 S Ct 1639; 6 L Ed 2d 751 (1961). Moreover, "an attorney's decisions relating to the selection of jurors generally involve matters of trial strategy, which we normally decline to evaluate with the benefit of hindsight." *Johnson*, 245 Mich App at 259 (citations omitted).

Allen has failed to overcome the presumption that defense counsel's decision was a product of effective trial strategy. The record does not show that the juror was biased or unable to follow the trial court's instructions regarding the presumption of innocence and the

prosecution's burden of proof. Although the juror agreed that his daughter was the victim of a similar type of crime, he indicated that the incident would not impact his ability to be a fair and impartial juror. He also indicated that he did not have strong feelings about sexual assault that would impact his ability to be fair and impartial. On this record, Allen has failed to show that counsel's performance during voir dire fell below an objective standard of reasonableness.

## C. SUFFICIENCY OF THE EVIDENCE

Allen challenges the sufficiency of the evidence to support his conviction of larceny from the person. We review de novo a defendant's challenge to the sufficiency of the evidence. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). We review "the evidence in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *People v Robinson*, 475 Mich 1, 5; 715 NW2d 44 (2006).

Larceny from the person is defined as "stealing from the person of another . . . ." MCL 750.357. The stolen property must have been "in immediate proximity to the victim at the time of the taking." *People v Smith-Anthony*, 494 Mich 669, 688; 837 NW2d 415 (2013). However, "courts treat victims as constructively present with the property, presuming that a victim would have retained possession of their property if no[t] overcome by violence or prevented by fear, [from] retain[ing] his possession of it." *Id*. at 684 (quotation marks and citation omitted; alterations in original).

Allen argues that the prosecution failed to prove that he took JH's cell phone from her immediate presence. This argument lacks merit because the evidence shows that Allen physically forced JH to relinquish control of the phone so that he could take it. After the assault, Allen took JH's cell phone, forced JH to unlock the phone, and started reading her text messages. JH then grabbed the phone from Allen's hand and ran to the stairway. Allen grabbed JH by the hair and "yanked" her head back in an attempt to get the phone back. JH threw the phone downstairs and went down to the basement to alert her roommate. Allen later retrieved JH's cell phone and left with it. JH's testimony shows that Allen used violence or fear to force JH to relinquish control of the phone and to gain access to the phone. Therefore, Allen took the phone from JH's immediate presence, and there was sufficient evidence to support the conviction of larceny from the person.

## D. SCORING OF OV4

Allen argues that the trial court erred by assigning 10 points for Offense Variable (OV) 4. We review the trial court's fact findings, which "must be supported by a preponderance of the evidence[,]" for clear error and the application of those facts to the statutory scoring guideline de novo. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).

A trial court should assign 10 points for OV 4 when the record shows that a "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). The "fact that treatment has not been sought is not conclusive." MCL 777.34(2). The trial court should not assume that the victim suffered serious psychological injury because of the type of

crime or the circumstances of the crime. *People v White*, 501 Mich 160, 163-165; 905 NW2d 228 (2017).

In this case, a preponderance of the evidence showed that JH suffered a "[s]erious psychological injury requiring professional treatment . . . ." See MCL 777.34(1)(a). JH testified that she was afraid and felt "[t]errible, scared[,]" and "worried about the baby." She stated that she was "still distraught" at the time of trial, that she had frequent nightmares, and that she still needed depression medication, which she admittedly took before the assault. JH's testimony about the continuing psychological ramifications of the assault supported the assignment of 10 points for OV 4. Therefore, the trial court did not err by assessing 10 points for OV 4.

## E. COURT COSTS

Allen contends that the trial court failed to set forth a factual basis in support of the $400 in court costs imposed at sentencing. Whether court costs were authorized by statute involves a question of statutory interpretation that this Court reviews de novo. *People v Konopka (On Remand)*, 309 Mich App 345, 356; 869 NW2d 651 (2015). We review this unpreserved issue for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

In this case, at the time of Allen's sentencing, the trial court had authority to impose $400 in court costs pursuant to MCL 769.1k, as amended by 2014 PA 352. MCL 769.1k(1)(b)(*iii*) "provides for an award of certain costs that are *not* independently authorized by the statute for the sentencing offense[.]" *Konopka*, 309 Mich App at 357. However, the trial court was required to articulate a factual basis for the $400 in costs imposed. See *id*. at 359-360. Absent a factual basis, this Court is unable to determine whether the costs were "reasonably related to the actual costs incurred by the trial court, as required by MCL 769.1k(1)(b)(*iii*)." *Id*. Accordingly, a remand to the trial court to establish a factual basis for the $400 costs imposed is appropriate.

## F. PROSECUTORIAL MISCONDUCT

Finally, Allen argues that the prosecutor engaged in misconduct that denied him a fair trial. We review unpreserved allegations of prosecutorial misconduct for plain error affecting defendant's substantial rights. *People v Unger (On Remand)*, 278 Mich App 210, 235; 749 NW2d 272 (2008). This Court "examines the record and evaluates the alleged improper remarks in context." *People v Paquette*, 214 Mich App 336, 342; 543 NW2d 342 (1995). We must determine "whether defendant was denied a fair and impartial trial." *Id*.

Allen argues that the prosecution elicited improper testimony from JH to show that he used women for money, forced JH to secure an auto loan for him, failed to assist her with the bills, and forced her to pay to have his car removed from an impound lot. Allen also contends that the prosecutor elicited testimony that Allen left guns at the house after he moved out.

"A prosecutor may not inject unfounded and prejudicial innuendo into a trial." *People v Dobek*, 274 Mich App 58, 79; 732 NW2d 546 (2007). In addition, a prosecutor "may not knowingly offer inadmissible evidence" or seek to elicit improper testimony. See *People v Dyer*, 425 Mich 572, 576; 390 NW2d 645 (1986) (quotation marks and citation omitted). However, "prosecutorial misconduct cannot be predicated on good-faith efforts to admit evidence." *People*

*v Noble*, 238 Mich App 647, 660; 608 NW2d 123 (1999). In general, relevant evidence is admissible at trial. MRE 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401.

We conclude that the prosecutor did not engage in misconduct when it elicited the testimony of which Allen complains. All of this testimony was relevant and admissible at trial. JH's testimony about the loans and the text messages shed light on the nature of the relationship she had with Allen. This testimony was relevant to show the context in which the sexual assault occurred and the control Allen attempted to exert over JH, including through financial means. This evidence was relevant to show that Allen used methods of control to force JH to have sex with him on the night of the assault and gave further context to the nature of the relationship.

In addition, the evidence showed that there was a breakdown in the relationship, which supported JH's testimony that the relationship was over and that she did not consent to having sex with Allen on the night of the assault. Evidence that Allen called JH about the car being impounded in Chicago was relevant to show that JH did not believe that Allen was in Grand Rapids on the night of the assault. This evidence was relevant to show that JH was credible when she testified that Allen did not live in the home with her and did not have permission to enter. Moreover, evidence that Allen stored guns at JH's home was relevant to show, in part, why JH may have been afraid on the night of the assault. In sum, the evidence was probative and admissible, and it did not constitute unfounded, prejudicial innuendo.

Allen also argues that the prosecutor committed misconduct during closing argument. Allen challenges the prosecutor's statements that all of the elements of the case were met, that the evidence was consistent with the victim's testimony, that Allen used the victim, and that other evidence corroborated JH's testimony. Allen argues that the prosecutor bolstered JH's testimony, inserted her own belief into the proceeding, and unfairly attacked Allen's credibility.

A "prosecutor may not vouch for the credibility of his witnesses by implying that he has some special knowledge of their truthfulness." *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004). However, "a prosecutor may comment on his own witnesses' credibility during closing argument, especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes." *Id*. Moreover, "a prosecutor is given great latitude to argue the evidence and all inferences relating to his theory of the case." *Id*. at 456.

We conclude that the prosecutor did not commit misconduct. Rather, the prosecutor's comments arguing that JH was credible and highlighting other evidence that corroborated JH's testimony flowed from the evidence. These arguments were proper and did not amount to improper vouching, nor did they raise an inference of personal knowledge of the case.

Moreover, the trial court instructed the jury that the arguments of the attorneys were not evidence and that the jury was to determine the facts of the case. "Curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements, and jurors are presumed to follow their instructions." *Unger*, 278 Mich App at 235 (citations omitted). Consequently, the trial court's instructions alleviated any potential prejudice.

We affirm in part and remand in part for proceedings consistent with this opinion.  We do not retain jurisdiction.

/s/ Peter D. O'Connell
/s/ Joel P. Hoekstra
/s/ Brock A. Swartzle