*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JAMAR WALKER,

        Defendant-Appellant.

UNPUBLISHED
February 19, 2019

No. 338889
Wayne Circuit Court
LC No. 16-002600-01-FC

Before: JANSEN, P.J., and BECKERING and O'BRIEN, JJ.

PER CURIAM.

Defendant appeals by right his jury convictions of assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84(1)(a); assault with a dangerous weapon without intending to commit murder or inflict great bodily harm less than murder (felonious assault), MCL 750.82; carrying a concealed pistol (CCW), MCL 750.227(2); carrying or possessing a firearm while ineligible to do so (felon-in-possession), MCL 750.224f(1); and carrying or possessing a firearm during the commission of a felony (felony-firearm), MCL 750.227b(1).[1] The trial court sentenced defendant as a fourth-offense habitual offender, see MCL 769.12, to 2 years' imprisonment for his felony-firearm conviction, 6 to 15 years' imprisonment for his AWIGBH conviction, and 2 to 15 years' imprisonment for each of his remaining convictions.

Defendant's convictions arise from his participation in a bar fight. Testimony at trial showed that he drew a handgun and shot another patron, Daniel Shelton. On appeal, defendant raises several claims of error. We conclude that none of his claims of error warrant a new trial or resentencing, but we agree that his conviction for felonious assault must be vacated. For the reasons explained in this opinion, we vacate defendant's conviction and sentence for felonious assault, but affirm in all other respects.

---

[1] The jury found Defendant not guilty of assault with intent to commit murder, MCL 750.83.

## I. INEFFECTIVE ASSISTANCE: IMPEACHMENT

## A. STANDARD OF REVIEW

Defendant first argues that his trial counsel should have impeached one of the witnesses against him, Antoine Shelton, with Antoine's prior conviction of breaking and entering with the intent to commit larceny. Because the trial court did not hold an evidentiary hearing on this claim of error, there are no factual findings to which this Court must defer, and this Court's review is for mistakes apparent on the record. *People v Gioglio (On Remand)*, 296 Mich App 12, 20; 815 NW2d 589 (2012), remanded for resentencing 493 Mich 864 (2012). This Court reviews de novo whether defense counsel provided ineffective assistance. *Id.* at 19-20.

## B. ANALYSIS

"To establish a claim of ineffective assistance of counsel, the defendant must show that 'counsel's representation fell below an objective standard of reasonableness' under prevailing professional norms and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Gioglio*, 296 Mich App at 22, quoting *Strickland v Washington*, 466 US 668, 688, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Under the first prong, defendant must identify those acts or omissions that he contends were not the result of reasonable professional judgment. *Gioglio*, 296 Mich App at 22. The reviewing court must then determine whether the identified acts or omissions were outside the wide range of professionally competent assistance under the totality of the circumstances. *Id.*

On appeal, defendant presented evidence that suggests that Antoine had, in fact, been convicted of a theft offense that might fall within the parameters stated under MRE 609(a)(2). But the evidence defendant presents is not part of the lower court record, and this Court normally does not permit a party to expand the record on appeal. See *People v Nix*, 301 Mich App 195, 203; 836 NW2d 224 (2013). Thus, defendant has not established the factual predicate of his claim—namely, that Antoine actually had a prior conviction with which he could have been impeached. See *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001) (explaining that "the defendant necessarily bears the burden of establishing the factual predicate for his claim" of ineffective assistance). It is also not clear that Antoine's prior conviction—if applicable—"has significant probative value on the issue of credibility," as required to be admissible under MRE 609(a)(2)(B). In any event, assuming that Antoine's prior conviction was admissible impeachment evidence and that it was objectively unreasonable for defense counsel to not present this evidence, defendant cannot establish that he was prejudiced by defense counsel's performance.

As this Court has explained:

> [I]t is not enough that the defendant showed that the act or omission had some conceivable effect on the outcome of the proceeding. Rather, the defendant must show that there is a reasonable probability that the outcome would have been different in the absence of the deficient performance. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Further, this determination must be made in consideration of the totality of the evidence presented to the jury and keeping in mind that some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. [*Gioglio*, 296 Mich App at 23 (quotation marks and citations omitted).]

Defendant cannot establish that defense counsel's failure to impeach Antoine with evidence of a prior conviction would have affected the outcome at trial because defense counsel sufficiently brought Antoine's credibility—as well as the credibility of Daniel and Andrew Shelton, who was Antoine's brother and the prosecution's third witness—into question. Defense counsel vigorously cross-examined Antoine. He elicited testimony that the situation at the bar was confused and chaotic. He got Antoine to admit that he left Daniel, his cousin, bleeding on the floor and avoided contact with the police officers after the shooting. He also examined him about his motive to mislead the jury and the fact that he had the opportunity to discuss his testimony with Daniel and Andrew, who were the prosecution's only two other witnesses present during the altercation. Defense counsel further attacked Antoine's credibility in his closing argument by suggesting to the jury that he did not really know what happened and reiterating that he may have coordinated his testimony with Daniel and Andrew. Defense counsel also focused heavily on Daniel's lack of credibility, including Daniel's testimony that he was the initial aggressor in the altercation. In short, defense counsel tried to emphasize the evidence that Daniel provoked a fight and that the scene was so chaotic that it was simply not credible that Antoine or Andrew knew who shot Daniel, and that they only identified defendant because Daniel wanted them to do so. Thus, the record is clear that defense counsel sufficiently brought Antoine's credibility into question, and we are unpersuaded that the additional impeachment evidence of Antoine's prior conviction would have affected the outcome of these proceedings.

We further note that the evidence strongly supported defendant's guilt. Although defense counsel argued that Daniel, Andrew, and Antoine coordinated their testimony, the record shows that Andrew and Antoine differed in significant respects from Daniel. The differences suggested that Daniel was trying to mitigate his role in precipitating a barroom brawl. The differences also suggested that Andrew and Antoine had not discussed their testimony with each other or Daniel. For example, although Andrew agreed that Antoine hit someone with a pool stick, he thought Antoine hit defendant. Antoine said that he hit one of defendant's companions. Nevertheless, they all agreed on certain key points. They all agreed that defendant was armed with a handgun. They also agreed that Daniel was fighting with defendant and that they heard multiple shots—albeit in different order. Finally, they agreed that Daniel ended up shot.

The blood evidence also corroborated their testimony. The evidence of a blood trail was consistent with Daniel's testimony about how he moved through the bar during the course of the struggle with defendant, was shot, hid behind the bar, and then came to lay down in the middle of the floor. It was also consistent with the testimony that Andrew was struck in the head and bled near the bar stools by the pool tables. The eye witnesses' testimony, when considered with the blood evidence, suggested that defendant was armed and shot Daniel during the struggle. In light of this evidence, it cannot be said that there was a reasonable probability that introduction of impeachment evidence on one of the three witnesses to the altercation would have affected the outcome of this case.

## II. OFFENSE VARIABLE 3

### A. STANDARD OF REVIEW

Defendant next argues that the trial court erred when it assigned 25 points under Offense Variable (OV) 3 of the sentencing guidelines because, according to defendant, there was no evidence that Daniel suffered a life-threatening injury. This Court reviews for clear error a trial court's findings in support of a particular score under the sentencing guidelines, but it reviews de novo whether the trial court properly interpreted and applied the sentencing guidelines to the findings. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).

### B. ANALYSIS

Although the sentencing guidelines are now advisory, trial courts must still properly score the guidelines by assessing the highest number of points possible under the facts for all offense variables. See *People v Lockridge*, 498 Mich 358, 392 n 28; 870 NW2d 502 (2015). Under MCL 777.33(1)(c), the trial court must assign 25 points under OV 3 if it finds that "[l]ife threatening or permanent incapacitating injury occurred to a victim" and no victim was killed.

Here, there was significant evidence from which the trial court could have found that Daniel suffered a life-threatening injury. Daniel testified that he was shot in the abdomen. Although he initially fled and hid, he left a blood trail and eventually came to lay down on the floor until emergency personnel arrived. He testified that he had to have two surgeries to correct the damage and that he was hospitalized for two weeks. Photos from the scene showed Daniel's blood loss, and the prosecutor admitted Daniel's medical records at trial. This evidence sufficiently demonstrated that Daniel suffered an injury that threatened his life in the absence of medical intervention. It was unnecessary to have medical testimony to prove that the injuries were life threatening. See *People v McCuller*, 479 Mich 672, 697 & n 19; 739 NW2d 563 (2007) (explaining that the severity of the injuries alone was sufficient to conclude that they were life threatening and noting that the statute does not require medical testimony). Based on this evidence, the trial court did not clearly err when it found that Daniel suffered a life threatening injury, see *Hardy*, 494 Mich at 438, and assigned 25 points under OV 3.

### III. STANDARD 4 BRIEF

Defendant has also raised several claims of error in a brief that he submitted under Administrative Order No. 2004-6, Standard 4, 471 Mich c, cii (2004).

### A. PROSECUTORIAL MISCONDUCT

Defendant claims that the prosecutor engaged in misconduct by eliciting perjured testimony from Daniel. He also claims that the prosecutor improperly appealed to the jury's sympathy for the victim. To preserve a claim that the prosecution wrongfully relied on perjured testimony at trial, the defendant must raise the issue before the trial court. See *People v Bass*, 317 Mich App 241, 272; 893 NW2d 140 (2016). Defendant did not object to the conduct about which he now complains. Similarly, to preserve a claim of prosecutorial misconduct, the

defendant must object to the conduct at trial, see *People v Cain*, 498 Mich 108, 114-115; 869 NW2d 829 (2015), and defendant did not object to the prosecutor's failure to correct Daniel's testimony, nor did he object to the prosecutor's closing argument. Therefore, these claims of error are unpreserved. See *id.*

This Court reviews unpreserved claims of error for plain error affecting the defendant's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). In order to establish a plain error that warrants relief, the defendant must show that there was a plain or obvious error and that the error affected the outcome of the lower court proceedings. *Id.*

A prosecutor violates a defendant's right to due process of law when he or she obtains a conviction through the knowing use of perjured testimony. *People v Aceval*, 282 Mich App 379, 389; 764 NW2d 285 (2009). The focus is on the fairness of the trial and not the culpability of the prosecutor or the trial court. *Id.* at 390. When the prosecutor knows that a witness has testified falsely, the prosecutor has an affirmative duty to correct the testimony. *People v Smith*, 498 Mich 466, 475-476; 870 NW2d 299 (2015).

Defendant argues on appeal that Daniel must have been lying—and that the prosecutor must have known that Daniel was lying—because Daniel stated that he had been shot twice even though, in defendant's view, the medical evidence showed otherwise. Defendant's interpretation of the medical records and his disagreement with Daniel's recollection does not establish that Daniel committed perjury. Initially, it is not clear that the medical records actually established that Daniel suffered only one gunshot injury. Defense counsel asserted outside the presence of the jury that the medical records, in his view, established that Daniel suffered two injures—one to the abdomen and one to the buttocks—but he opined that the bullet might have been a "through-and-through," and so the injuries might have been caused by a single gunshot. For that reason, he asked the trial court to reconsider its earlier denial of his motion for a directed verdict. The court concluded that whether both injuries were from a single gunshot, as suggested by defense counsel, or whether they were from two separate gunshots, as Daniel testified, was a factual dispute for the jury.

But even assuming that Daniel had only been shot once, Daniel might merely have been mistaken about the number of times that he was struck. See *People v Lively*, 470 Mich 248, 253-254; 680 NW2d 878 (2004) (providing that perjury is a willfully false statement). Further, a prosecutor has no obligation to disbelieve his or her own witnesses. See *People v Lester*, 232 Mich App 262, 278-279; 591 NW2d 267 (1998), overruled not in relevant part *People v Chenault*, 495 Mich 142; 845 NW2d 731 (2014). The prosecutor could reasonably conclude that, under the totality of the circumstances, Daniel was telling the truth to the best of his ability. And the prosecutor could proceed on that assumption without violating due process so long as she did not conceal the conflicting evidence from the jury. See *People v Parker*, 230 Mich App 677, 690; 584 NW2d 753 (1998). Thus, especially given the differing interpretations of the medical evidence, defendant has failed to establish that the prosecutor knowingly elicited perjured testimony or committed misconduct by not correcting Daniel's testimony. See *Aceval*, 282 Mich App at 389.

Defendant additionally argues that the prosecutor made an improper appeal to sympathize with Daniel by telling the jury: "It's snitches get stitches. So, he's got to sit on this stand now, come and talk in front of the person that pulled out a gun and shot him twice . . . ."

A prosecutor's role in our criminal justice system is not merely to convict; it is to seek justice. *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). A prosecutor may jeopardize the defendant's right to a fair trial by interjecting issues broader than the defendant's guilt or innocence, *id.*, so it is generally improper for a prosecutor to try and arouse the prejudice of jurors against the defendant, *People v Bahoda*, 448 Mich 261, 266; 531 NW2d 659 (1995), or appeal to the jury's sympathy for the victim, *People v Dalessandro*, 165 Mich App 569, 581; 419 NW2d 609 (1988).

In determining whether a prosecutor's remarks rose to the level of prosecutorial misconduct, this Court must review the remarks in context. See *Bahoda*, 448 Mich at 266-267. And when read in context, the prosecutor's reference to "snitches" and her statement about Daniel's demeanor on the stand during rebuttal were not improper in light of defense counsel's arguments during closing. See *Dobek*, 274 Mich App at 64 (noting that a prosecutor's comments must be evaluated in light of defense arguments and stating that a comment that might be improper in one context might be proper if made in answer to issues raised by defense counsel). The prosecutor made the contested remarks during rebuttal after defense counsel vigorously argued that Daniel, Antoine, and Andrew could not be believed. The prosecutor's remarks were in response to the contentions that Daniel was trying to put a "case" on defendant, and that Antoine and Andrew were not credible because they did not go out of their way to cooperate with police officers. The prosecutor suggested that their lack of cooperation was understandable given the culture of silence with which they were raised:

Crowded bar, Ms. Livingston. Why don't you have fifteen people sitting in this chair [the witness chair]? The family of Daniel Shelton, as they seen him almost die that night, didn't even want to talk to the police. They tried to avoid Detective Mayes as much as they could. Do you think that felt good for `em? Do you think they were happy about that? No.

But as we go with our sayings that actions speak louder than words, pictures are worth a thousand words, there's another saying. It's snitches get stitches. So, he's got to sit on this stand now, come and talk in front of all ya'll and tell you what happened in front of the person that pulled out a gun and shot him twice, to where they're beating people in the face. He said: Oh, well, Andrew Shelton didn't say in his statement that he had gotten pistol whipped. Where were you standing, sir? He's by the bar stools. I got hit so hard, I had to wipe the blood from my face. Were you bleeding? Yes, sir. Where's the blood? You didn't write it down. Can't be sure. Can't be sure.

His own family didn't want to come in here and testify because they aren't raised that way. He didn't want to pick up the phone and call the police and say, hey, the guy who just, you know, robbed me six months ago, he's in the bar right now. Could you please send some police cars down here? Thank you. No.

That's not how they do things. That's not how this works. They tried to just squash it. . . .

At trial, Antoine testified on redirect examination that he did not go to the police department with his information because he "wasn't raised like to talk to the police." Therefore, there was evidence from which the prosecutor could argue that the witnesses' evasive interactions with police officers might best be explained by their background rather than because they were not telling the truth. See *Dobek*, 274 Mich App at 66 (recognizing that courts afford wide latitude to prosecutors to argue the facts and the inferences to be drawn from the evidence). The comment about "snitches" and "stitches" can best be described as a colorful reminder of the culture within which the witnesses were raised. The prosecutor was not required to state her arguments in the blandest possible terms. *See id.*; see also *People v Allen*, 351 Mich 535, 544; 88 NW2d 433 (1958) ("Criminal trials are not basket luncheons, and we seem faintly to recall that in our experience opposing lawyers rarely if ever pelted each other with rose petals."). The prosecutor's remarks were proper commentary on the evidence stated in response to the arguments by defense counsel. See *Dobek*, 274 Mich App at 64. Defendant has not established that the prosecutor engaged in conduct that amounted to plain error.

## B. DOUBLE JEOPARDY

Defendant next argues that it was a violation of the Double Jeopardy Clause to punish him for both felonious assault and AWIGBH arising from the same act. In a recent decision from this Court, a majority recognized that our Supreme Court has rejected the contention that it is a violation of the prohibition against being placed in double jeopardy for a jury to convict a defendant of both felonious assault under MCL 750.82 and AWIGBH under MCL 750.84. See *People v McKewen*, ___ Mich App ___, ___; ___ NW2d ___ (2018) (Docket No. 339068); slip op at 4, citing *People v Strawther*, 480 Mich 900; 739 NW2d 82 (2007), and *People v Wilson*, 496 Mich 91, 102; 852 NW2d 134 (2014), abrogated on other grounds by *Bravo-Fernandez v United States*, 137 S Ct 352 (2016). Nevertheless, the majority held that a jury cannot convict a defendant of both offenses for the same conduct because the two offenses are mutually exclusive. The Court explained that, in order to be guilty of AWIGBH, a jury must find that the defendant had the intent to do great bodily harm, but the jury would have to simultaneously find that the defendant did not intend to do great bodily harm to find the defendant guilty of felonious assault. See *McKewen*, ___ Mich App at ___; slip op at 4-5. The Court held that the proper solution for a trial court confronted with a verdict of guilty on both offenses arising from the same conduct was to enter judgment of conviction on the AWIGBH charge, but not felonious assault. *Id.*; slip op at 5.

Although defendant framed this claim of error as involving double jeopardy, he also challenged whether a jury could find both intents. Therefore, we conclude that he sufficiently raised the issue to apply the decision in *McKewen*. Although the trial court did not have the benefit of *McKewen*, we conclude that it was plain error for it to allow the jury to convict defendant of both AWIGBH and felonious assault, and that the error prejudiced defendant. See *Carines*, 460 Mich at 763. Consequently, we vacate defendant's conviction of felonious assault and remand this case to the trial court for the ministerial task of correcting the judgment of sentence as stated in *McKewen*, ___ Mich App at ___; slip op at 7. Vacating this conviction does not affect defendant's minimum guidelines range, so resentencing is not required.

## C. OTHER ACTS TESTIMONY

Defendant next complains that defense counsel's response to the prosecution's notice of intent to admit evidence that defendant robbed Daniel at gunpoint months before the altercation in the bar was inadequate. Defendant contends that defense counsel's response was deficient because he did not respond to the prosecutor's notice in writing. Defendant cites no authority for the proposition that defense counsel had to respond in writing, nor does he offer any argument as to how defense counsel's approach prejudiced his trial. By failing to offer any meaningful discussion of the facts and law, defendant has abandoned this claim of error. See *People v Martin*, 271 Mich App 280, 315; 721 NW2d 815 (2006).

In any event, as our Supreme Court has stated, other-acts evidence is generally admissible unless offered solely to prove action in conformity with character. See *People v VanderVliet*, 444 Mich 52, 62-64; 508 NW2d 114 (1993); see also *People v Jackson*, 498 Mich 246, 276; 869 NW2d 253 (2015) ("As we have made clear, however, MRE 404(b) does not prohibit all other-acts evidence 'that may . . . give rise to an inference about the defendant's character,' but only that which is 'relevant solely to the defendant's character or criminal propensity.' ") (Citation omitted.)

Here, the prosecutor stated that she intended to offer the other-acts testimony for several reasons other than to prove action in conformity with character. She stated that the testimony would provide essential context that would allow the jury to understand Daniel's testimony. The evidence would establish how it was that Daniel recognized defendant when he entered the bar, why Daniel feared defendant, and why defendant might have decided to approach Daniel in the bar. The proposed other-acts testimony was relevant and otherwise admissible for these purposes under MRE 401 and MRE 402. See *VanderVliet*, 444 Mich at 74-75. The mere fact that the evidence implicated defendant's character did not make the evidence inadmissible under MRE 403. Indeed, the importance of the testimony to prove matters in contention outweighed the danger that the jury might make an improper inference, and a jury instruction would plainly be adequate to ensure that the jury appropriately used the evidence. See *People v Roper*, 286 Mich App 77, 106; 777 NW2d 483 (2009). Because the other-acts evidence was admissible, defendant cannot show that his trial counsel's failure to file a written response or argue more vigorously for the preclusion of the other-acts testimony prejudiced his trial. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) (recognizing that defense counsel does not have an obligation to make a meritless objection). Defendant has thus failed to show that defense counsel's response to the prosecutor's notice was deficient and prejudiced his trial. See *Gioglio*, 296 Mich App at 19-20.

## D. SUGGESTIVE PHOTO

Defendant also argues in an unpreserved claim that Daniel's identification of him at trial was tainted by Daniel's earlier exposure to an unduly suggestive photo that Daniel obtained from his cousin. However, the constitutional principles that defendant discusses in his brief for this issue apply to identifications that were made by a witness after an impermissibly suggestive lineup that was conducted by *police officers*. In the absence of state action, a defendant does not have a due-process right to have a court review the reliability of the identification. See *Perry v New Hampshire*, 565 US 228, 245; 132 S Ct 716; 181 L Ed 2d 694 (2012) ("The fallibility of

eyewitness evidence does not, without the taint of improper state conduct, warrant a due process rule requiring a trial court to screen such evidence for reliability before allowing the jury to assess its creditworthiness."). Rather, the weaknesses in the identification are a matter of weight and credibility to be tested through the adversarial process. See *id.* at 245-247. It is undisputed that there was no state action involved. Therefore, there was no plain error. See *Carines*, 460 Mich at 763.

Defendant also briefly states that Daniel's identification of him was also tainted by an impermissibly suggestive confrontation at the preliminary examination. However, he has abandoned that claim—to the extent that it is an independent claim of error—by failing to provide any context or meaningful discussion of the issue. See *Martin*, 271 Mich App at 315.

### E. COMPETENCY HEARING

Defendant also claims that defense counsel provided ineffective assistance by failing to request a competency examination.

A defendant is presumed to be competent and will only be determined to be incompetent if it is found that, because of his or her mental condition, he or she is incapable of understanding the nature and object of the proceedings against him or her, or of assisting in his or her defense in a rational manner. See MCL 330.2020(1).

Defendant claims that defense counsel knew about his mental health history through his presentence investigation report and his status at the jail, and he complains that defense counsel failed to request his mental health records. Yet defendant does not state that he was actually incompetent at any point in the lower court proceedings. And even addressing defendant's arguments, defense counsel does not have to assume that his or her client should have a competency hearing simply because his or her client has a history of mental illness. Our caselaw is clear that, instead, there must be some indicia of the need for a competency hearing. See *People v Mette*, 243 Mich App 318, 331-332 & n 8; 621 NW2d 713 (2000). In the absence of evidence to establish that defendant's trial counsel should have been aware that defendant might not have been competent to stand trial, defendant cannot establish his claim of ineffective assistance. See *id.* at 332 n 8. Rather, this Court must presume that defense counsel did not request a competency hearing because it appeared to him that defendant was capable of understanding the proceedings and participating in his own defense. See *Gioglio*, 296 Mich App at 22. Therefore, defendant has not shown that his trial counsel's failure to request a competency hearing amounted to ineffective assistance. See *id.* at 19-20.

### F. IMPARTIAL JUDGE

Finally, defendant argues that the trial court deprived him of a fair trial by exhibiting favoritism and limiting defense counsel's cross-examination of Daniel. Defendant did not preserve this claim of error by raising the issue before the trial court. See *People v Paquette*, 214 Mich App 336, 340; 543 NW2d 342 (1995). He also did not object to the trial court's comments or its decision to limit the line of questioning. Therefore, this claim of error is unpreserved. See *id.*

This Court reviews unpreserved claims of error for plain error affecting the defendant's substantial rights. *Carines*, 460 Mich at 763.

A trial judge's conduct at a jury trial can interfere with the defendant's right to a fair and impartial trial. See *Stevens*, 498 Mich at 164. The test for judicial misconduct that deprives a defendant of a fair trial depends on whether the judge's conduct pierced the veil of judicial impartiality:

> A trial judge's conduct deprives a party of a fair trial if the conduct pierces the veil of judicial impartiality. A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party. In evaluating the totality of the circumstances, the reviewing court should inquire into a variety of factors including, but not limited to, the nature of the trial judge's conduct, the tone and demeanor of the judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions, either at the time of an inappropriate occurrence or at the end of trial. [*Id.*]

On appeal, defendant cites to four pages of defense counsel's cross-examination of Daniel in support of his claim that the trial court was biased and made improper rulings. However, the court's rulings and comments cannot be read in isolation, and instead must be understood in light of defense counsel's prior questioning, which began approximately 40 pages before the comments at issue. See *id.* at 171-172 (stating that the inquiry into judicial misconduct is fact specific and courts must consider the comments in context). When read in context, we conclude that the trial court's comments did not pierce the veil of judicial impartiality.

From the very start, defense counsel vigorously challenged Daniel's credibility, and his questioning frequently resulted in argumentative exchanges. The trial court had to remind Daniel to just answer defense counsel's questions on some occasions and sustained objections to the nature of defense counsel's questioning on other occasions. Defense counsel's questioning made it clear that he did not believe Daniel when he testified that he saw that defendant had a gun in his pocket before the fight, and did not believe his identification testimony.

After approximately 40 pages of contentious questioning, defense counsel again began to ask Daniel questions about the sequence of events that Daniel had already answered on direct examination. Defense counsel, however, couched his question in terms suggesting incredulity: "So, then you're saying that you let go of him, is that correct? During this fight." At that point, the trial court stated that it would not allow that type of questioning to "go on again." When defense counsel began posing questions that, although not necessarily covered by defense counsel during cross-examination, had been covered on direct examination, the trial court asked defense counsel to move on. But then after this exchange, the trial court allowed defense counsel to question Daniel for some time more and did not prevent defense counsel from again questioning Daniel about the circumstances under which he purportedly saw a gun.

On this record, defendant has not shown that the trial judge's comments pierced the veil of judicial impartiality. The judge's comments were not intemperate and were directed to the witness at some points and to defense counsel at others. It is evident from the record that there was tension between the witness and defense counsel, and the trial judge's comments were intended to control the interrogation and ensure that defense counsel and the witness did not inhibit the progress of the case. See *Rose*, 289 Mich App at 509. Nothing on this record suggests that the jury might have inferred that the trial court favored the prosecution. See *Stevens*, 498 Mich at 164.

To the extent that the trial court might have erred by instructing defense counsel to move on to a new line of questioning, that error was minor and did not prevent defense counsel from continuing his interrogation of Daniel. Defense counsel had already thoroughly cross-examined Daniel about the deficiencies in his version of events and, even though the trial court told defense counsel to move on, it did not actually prevent defense counsel from continuing his cross-examination. Defense counsel made it abundantly clear that it was the defense's contention that Daniel started the bar fight, and that Daniel was lying or mistaken about seeing defendant with a gun. Defendant has not shown that the trial court's decision to instruct defense counsel to move to a new line of questioning prejudiced his defense. See *Carines*, 460 Mich at 763.

## IV. CONCLUSION

Defendant cannot be convicted of both AWIGBH and felonious assault arising from the same conduct. Therefore, we vacate the lesser conviction of felonious assault. Because defendant did not identify any errors that otherwise warrant a new trial or resentencing, we affirm his remaining convictions and sentences.

Vacated in part, affirmed in part, and remanded to the trial court for the ministerial task of correcting the judgment of sentence consistent with this opinion. This does not affect defendant's minimum guidelines range, so resentencing is not required. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Colleen A. O'Brien

-11-