*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

RICHARD TAVIS RIGGINS,

Defendant-Appellant.

UNPUBLISHED
November 26, 2019

No. 343598
Macomb Circuit Court
LC No. 2017-002918-FH

Before: JANSEN, P.J., and BOONSTRA and LETICA, JJ.

PER CURIAM.

Defendant was convicted by jury of third-degree child abuse, MCL 750.136b(5). The trial court sentenced him to 18 months' probation. He appeals as of right. We affirm.

## I. FACTS

Defendant struck the 8-year-old victim, his son RR, with a belt during Memorial Day weekend in 2017. Defendant testified to "whooping" RR with a folded belt over his underwear to discipline him for allegedly shoplifting. Defendant denied that he intended to harm RR.

However, RR testified that he was nude when defendant lashed him approximately seven times with a straight belt. During the last strike, RR felt the metal part of defendant's belt buckle on his front side. As a result of the "whooping," RR was severely bruised and could not sit in a chair.

Defendant and KS, defendant's fiancée, testified that RR did not appear to be in pain and did not have difficulty sitting. There was also evidence that RR fell off a bicycle the day after he was "whooped." But there was no indication that RR's bicycle mishap was the major contributing cause of RR's bruising.

Approximately two days later, RR showed his mother, LM, his bruises. LM described RR's bruising as "very deep blue" or purple. The bruising extended across RR's hips, buttocks, and thighs. LM took RR to the hospital emergency room where a doctor evaluated him.

-1-

Thereafter, Child Protective Services asked Dr. Mary Smyth to examine RR. Dr. Smyth observed multiple deep brown and purple bruises on RR's "lower back and buttocks and thighs, [and] his upper legs," as well as swelling on his buttocks. Dr. Smyth testified that, when she touched RR's bruises, they appeared "exquisitely painful" with an "indication of swelling" and they felt "tense." Medical testing established that RR's blood results were normal and that he had no indicators for a bleeding disorder. Yet, blood was found in RR's urine; this was abnormal and indicated a potential injury to RR's muscle tissue or kidneys. Dr. Smyth concluded that RR's injuries were consistent with RR being beaten with a belt.

Photographs of RR's bruises were admitted at trial. They graphically depict the extensive nature of RR's injuries.

## II. PROSECUTORIAL ERROR

Defendant argues that he is entitled to reversal of his conviction and a new trial because the prosecutor deprived him of a fair trial by committing several alleged errors. Although we agree that the prosecutor erred on occasion, we conclude that reversal is not required.

### A. STANDARDS OF REVIEW

We review claims of prosecutorial misconduct "case by case, examining the remarks in context, to determine whether the defendant received a fair and impartial trial." *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001). Thus, the test for whether prosecutorial misconduct occurred was whether defendant was denied a "fair and impartial trial." *People v Paquette*, 214 Mich App 336, 342; 543 NW2d 342 (1995). Improper questioning of a defendant by the prosecutor is nonconstitutional error. *People v Blackmon*, 280 Mich App 253, 259; 761 NW2d 172 (2008). "[A] preserved, nonconstitutional error is not grounds for reversal unless, after an examination of the entire cause, it affirmatively appears that it is more probable than not that the error was outcome determinative." *People v Williams*, 483 Mich 226, 243; 769 NW2d 605 (2009). "An error is outcome determinative if it undermine[s] the reliability of the verdict[.]" *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010) (quotation marks omitted). In making this determination, this Court focuses on the nature of any error in light of the strength and weight of the properly admitted evidence. *Id*. The defendant bears the burden to demonstrate that the error resulted in a miscarriage of justice. *People v Hawthorne*, 474 Mich 174, 181; 713 NW2d 724 (2006).

On the other hand, unpreserved issues regarding prosecutorial misconduct are reviewed for plain error affecting substantial rights. *Watson*, 245 Mich App at 586. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). After these three criteria are met, we will only reverse when the plain error "resulted in the conviction of an actually innocent defendant or . . . seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks and alterations omitted). Furthermore, we will not review claims of prosecutorial misconduct "where the defendant fails to object or request a curative instruction, unless the misconduct was so egregious that no curative instruction could have removed the prejudice to the defendant or if manifest

injustice would result from our failure to review the alleged misconduct." *Paquette*, 214 Mich App at 341-342.

## B. ANALYSIS

Defendant argues that the prosecutor improperly: (1) asked defendant to comment on RR's credibility and testimony, (2) asked KS about a prior bad act, (3) made inappropriate comments and statements during closing argument, and (4) elicited improper and inflammatory opinion testimony from a lay witness. Reviewing each of defendant's assertions in turn, we conclude there was no reversible error.

## 1. ASKING DEFENDANT TO COMMENT ON THE VICTIM'S CREDIBILITY

Defendant argues that he is entitled to reversal because the prosecutor erred by asking him to comment on RR's credibility by inquiring whether RR was "lying" or "mistaken" when he testified. On cross-examination, the prosecutor questioned defendant as follows:

[*Prosecutor*]: So, if [RR] said that it was just the straight belt and the buckle was in your hand, he was lying?

[*Defense Counsel*]: Judge, objection, calls for speculation.

[*Prosecutor*]: It's what he testified to in court.

*The Court*: It wasn't a lie, he would be incorrect, is the appropriate question.

[*Prosecutor*]: Okay. He would be incorrect.

BY [*Prosecutor*]:

*Q*. He would be incorrect, if that's what he said.

*A*. [*Defendant*] You asking me that?

*Q*. It's a question, yeah.

*A*. No, that wasn't right.

\* \* \*

*Q*. When you were whipping him, you want this jury to believe that he was wearing shorts or underwear, what was it, underwear?

*A*. He had his underwear on.

*Q*. So, he was incorrect when he said he was naked, right?

*A*. Right.

-3-

*Q.* Because that would be probably pretty extreme to do to a child when they're naked, right?

*A.* Pretty so, yeah.

*Q.* Do you agree—you said you were whooped. When you were whooped, did you get whooped on your bare butt, or did you have—

*A.* I had clothes on.

*Q.* Right. So doing it on the bare butt would be pretty extreme, right?

*A.* Yes.

\* \* \*

*Q.* So, when [RR] said that that's where the buckle part hit him, he was mistaken?

*A.* No, because I didn't hit him with a buckle.

*Q.* Right. So he was mistaken then.

*A.* Yes.

*Q.* And that wasn't true?

*A.* Yes.

Because defendant objected to the prosecutor's question on a different ground, MRE 103(a)(1), or because he failed to object, his challenges are unpreserved and reviewed for plain error. *Carines*, 460 Mich at 763-764. The law is well-established that it is improper for a prosecutor to ask a testifying defendant to comment on the credibility of the prosecution witnesses because his opinion of their credibility is not probative. *People v Buckey*, 424 Mich 1, 17; 378 NW2d 432 (1985); *People v Ackerman*, 257 Mich App 434, 449; 669 NW2d 818 (2003). But the law is just as clear that "such questions are curable with a limiting instruction." *People v Messenger*, 221 Mich App 171, 180; 561 NW2d 463 (1997), citing *Buckey*, 424 Mich at 18. See also *People v Gaines*, 306 Mich App 289, 308; 856 NW2d 222 (2014). The trial court here repeatedly instructed the jury that it alone was to determine the facts and credibility of the witnesses. *Gaines*, 306 Mich App at 308. "Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). Moreover, as in *Buckey*, "the substance of the exchange[s] indicates that defendant dealt rather well with the questions."[1] 424 Mich at 17. And, given the facts in this

---

[1] Interestingly, on direct examination, defendant himself characterized RR's testimony about being naked when he was "whooped" as untrue.

case, there is no basis to conclude that the prosecutor's questioning resulted in the conviction of an actually innocent defendant or that the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *Ackerman*, 257 Mich App at 449.

## 2. STATEMENT ABOUT PRIOR BAD ACT

Defendant next argues that the prosecution committed error by asking KS about an allegedly unfounded prior bad act based on the following exchange:

> *Q.* I can't remember all of it, but you guys have a really good relationship, right?
>
> *A.* Correct.
>
> *Q.* How would you explain, then, [KS] the fact that when [RR] talked to the police, he told them that you had choked him out before?
>
> [*Defense Counsel*]: Judge, I am going to object.
>
> *The Court*: Sustained.
>
> [*Defense Counsel*]: Relevancy.
>
> [*Prosecutor*]: Wait a minute. Yes, Judge, but I just want to make my record. He opened the door by asking about their relationship.
>
> *The Court*: No. You can ask about the relationship, but you can't ask what somebody else said. Counsel, that's hearsay. Absolute hearsay.
>
> * * *
>
> [*Prosecutor*]: No. I am trying to show – he [defense counsel] opened the door to say that they had a good relationship and I'm trying to show that they did not have a good relationship.
>
> *The Court*: You can't do that with out-of-court statements, Counsel.
>
> [*Prosecutor*]: Okay.
>
> * * *
>
> *The Court*: So it is stricken. The jury's not to consider it.

This issue is preserved for appellate review because defense counsel objected to the prosecutor's question. *Watson*, 245 Mich App at 586. But because the trial court sustained defendant's objection and struck the objected-to testimony, defendant has already received his relief. *People v Miller (After Remand)*, 211 Mich App 30, 42-43; 535 NW2d 518 (1995). Additionally, the trial court provided curative instructions to the jury, specifically directing it not to consider the statement and generally instructing it not to consider any stricken testimony or

statements. Again, "[c]urative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements, and jurors are presumed to follow their instructions." *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008) (citations omitted). Accordingly, defendant is not entitled to any further relief on this claim.

### 3. CLOSING ARGUMENTS

Defendant argues that the prosecutor committed several errors during her closing remarks. Because defendant did not object during the prosecutor's closing argument, we review the impact of these statements for plain error. *Carines*, 460 Mich at 763-764. In general, prosecutors are given great latitude regarding their conduct and arguments during trial. *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995). Prosecutors are "free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *Id*. (quotation marks and alterations omitted). The propriety of the prosecutor's remarks depends on all the facts of the case. *People v Rodriguez*, 251 Mich App 10, 30; 650 NW2d 96 (2002). The disputed comments must be read as a whole and evaluated in the light of defense arguments and the relationship they bear to the evidence admitted at trial. *Id*. Prosecutors may argue that a jury should not believe a defendant's theory of the case as long as such argument is based on the evidence. *People v Meissner*, 294 Mich App 438, 457-458; 812 NW2d 37 (2011).

### A. DISPARAGING DEFENSE COUNSEL

Defendant first argues that the prosecutor impermissibly denigrated defense counsel. Defendant specifically challenges the following statements made by the prosecutor during closing arguments: (1) that defense counsel tried to "blame everybody else but the defendant,"[2] (2) that defense counsel attempted to "confuse the jury" by presenting "red herrings,"[3] and (3)

---

[2] The prosecutor argued:

> Now, the defense went on and on about all these different blood disorders, and the doctor shot every one of those down. This is just an example . . . of the defense trying to blame everybody else but the defendant.

[3] The prosecutor stated:

> Lastly, Dr. Smyth told us her final assessment was this: Injuries are consistent with being beat[en] with a belt. That's what she said. Notice she didn't say the injuries are consistent with falling off a bike. Notice she didn't say the injuries are consistent with playing football or getting hurt during basketball or from bad nutrition or ADHD, like the defense would like you to believe.

> In the law we call those—as lawyers, I should say, we call those red herrings. When you have the facts on your side, you get in front of the jury and you argue the facts. When you have the law on your side, you stand in front [of] the jury and you argue the law. When you don't have either of those one your side, you throw out a whole bunch of things and you hope that you confuse the jury.

that defense counsel, by suggesting that RR's bruising resulted from falling off his bicycle, threw "a bunch of random things out there and [is] hoping you bite."

A prosecutor is not permitted to suggest that defense counsel is intentionally attempting to mislead the jury. *Unger*, 278 Mich App at 236; *Watson*, 245 Mich App 592. Although the prosecutor is cautioned to steer clear of like remarks directed at defense counsel in the future, viewed in context, we read the comments here as challenging the alternate explanations offered for RR's injuries, not defense counsel's integrity. *Bahoda*, 448 Mich at 286. And, to the extent that the prosecutor's comments were inappropriate, they were "brief and did not likely deflect the jury's attention from the evidence presented in this case." *Unger*, 278 Mich at 237. The trial court also repeatedly instructed the jury that the attorneys' arguments were not evidence, curing any error. *Id.* Accordingly, any error did not affect defendant's substantial rights. *Carines*, 460 Mich at 763-764.

## B. COMMENTING ON THE CREDIBILITY OF DEFENDANT AND WITNESSES

Defendant contends that the prosecutor improperly commented on defendant's motive to lie during closing arguments.

A prosecutor may not vouch for the credibility of her own witness by suggesting special knowledge of a witness's truthfulness; however, "the prosecutor may argue from the facts that a witness should be believed." *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009) (quotation marks omitted). "Opportunity and motive to fabricate testimony are permissible areas of inquiry of any witness." *Buckey*, 424 Mich at 15. "Allowing comment upon the fact that a defendant's presence in the courtroom provides him a unique opportunity to tailor his testimony is appropriate—and indeed, given the inability to sequester the defendant, sometimes essential—to the central function of the trial, which is to discover the truth." *Portuondo v Agard*, 529 US 61, 73; 120 S Ct 1119; 146 L Ed 2d 47 (2000).

Defendant takes issue with a portion of the prosecutor's closing argument that implied he was lying while RR was telling the truth:

> He said that [RR] had his underwear on. Because even the defendant agreed himself, that it's excessive to hit a child without underwear. Why would [RR] lie about the fact that he was naked? Who has something to gain by the fact that you got to say he was wearing underwear? The defendant. You know why? Because he sat here during jury selection and he heard almost everybody talk about one of the things that they are concerned about, or what they think about when they're whipping or getting whipped, were you wearing clothes. Almost everybody said that they got hit over their clothes. The defendant, I suggest to you, was smart enough to get on that stand and lie to you and say he was wearing clothes, so it doesn't look so bad.

These comments were responsive to defendant's testimony that RR's account was inaccurate or untrue.[4] The prosecutor argued that, based on the facts in evidence, her witnesses were credible, unlike defendant. *Seals*, 285 Mich App at 22. The prosecutor also permissibly commented on defendant's presence in the courtroom during voir dire and his opportunity to tailor his testimony as a result. *Agard*, 529 US at 73. The prosecutor relied on facts in the record during her argument and did not suggest she had special knowledge regarding whether defendant was testifying truthfully. *Gaines*, 306 Mich App at 309. Therefore, the prosecutor did not commit error.

And, even if this Court were to decide that the prosecutor erred, defendant cannot establish plain error. Defendant suffered no prejudice in light of the compelling evidence presented and the trial court's instructions to the jury that the attorneys' closing arguments were not evidence and that it was the jury's function to determine witness' credibility. *Carines*, 460 Mich at 763; *Paquette*, 214 Mich App at 341-342.

## C. INJECTING ALLEGED PERSONAL KNOWLEDGE OF PROSECUTOR

Defendant also asserts that the prosecutor erred by including unsworn testimony based her personal knowledge in her closing remarks. In particular, the prosecutor stated:

> And I get it, oftentimes – listen, I read these reports all of the time. A parent says the buckle slipped out of his hand. Right? But here's the deal, it can't slip out of your hand if it's what's in your hand when you're whipping. And for those of you who have been whipped before, if you take the whip, or the belt, and you make it – you close it at the ends, it's going to hurt less. It's going to hurt more when you have this wild hitting with the long edge of the belt.

"A prosecutor may not make a statement of fact to the jury that is not supported by evidence presented at trial and may not argue the effect of testimony that was not entered into evidence." *Unger*, 278 Mich App at 241. Although the prosecutor erred by briefly touching upon her experience in reviewing other reports not in evidence, she did not expound on the facts from other cases. Instead, the prosecutor properly urged the jury to apply its own experience and common sense to evaluate and draw reasonable inferences regarding defendant's testimony that he used a folded belt to strike RR. As the prosecutor explained, using a straight belt rather than a folded one would provide increased momentum and the ability to inflict greater pain. Because

---

[4] Defendant also refers to an exchange during defense counsel's closing argument where the prosecutor objected to the facts not being in evidence. Defense counsel alleged that defendant had earlier told the police that RR was wearing underwear during the incident. The prosecutor properly objected to defense counsel's attempt to discuss facts not in evidence. *Watson*, 245 Mich App at 588 (discussing the inappropriateness of arguing facts not in evidence). Defendant, however, asserts that this demonstrates that the prosecutor knew defendant was not lying because the prosecutor had knowledge of defendant's comments to the police. Given that this evidence is not on the record and that we may only address the record before us, we reject defendant's contention.

these remarks were grounded in the evidence and reasonable inferences therefrom, they were appropriate. *Bahoda*, 448 Mich at 282.

## 4. TESTIMONY ABOUT BRUISING

Defendant asserts that the prosecutor erred by eliciting inflammatory testimony regarding RR's bruises from LM. While questioning LM, the prosecutor asked her if RR's bruising was something more than she "would expect to see." LM replied:

> Oh, definitely. That's not a spanking. A spanking would not be that deep of a bruising. It honestly resembles, like when you have a boxing match and you see someone bruised from that. But, honestly, worse than that, because it's how – the span, and how deep the bruising was.

Because defendant failed to object, we review his claim for plain error. *Carines*, 460 Mich at 763; *Watson*, 245 Mich App at 586. Because LM's testimony was rationally based on her observations of RR's bruises, there was no error. LM's testimony is proper under the court rules. MRE 701 ("If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witnesses' testimony or the determination of a fact in issue."). And, even if defendant could establish error, he would not be entitled to reversal because he has not demonstrated that his substantial rights were affected, that he is actually innocent, or that the error seriously affected the fairness, integrity or public reputation of judicial proceedings. *Carines*, 460 Mich at 763-764.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Alternatively, defendant argues that his counsel was ineffective for failing to object to or to seek a limiting instruction from the trial court regarding the above-discussed instances of prosecutorial error. We disagree.

In order to preserve an ineffective-assistance-of-counsel claim for appellate review, the defendant should make a motion in the trial court for a new trial or evidentiary hearing. *People v Sabin (On Second Remand)*, 242 Mich App 656, 658; 620 NW2d 19 (2000). Because defendant failed to do so here, this Court's review is "limited to mistakes apparent on the record." See *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

The denial of effective assistance of counsel is a mixed question of fact and constitutional law, which are reviewed, respectively, for clear error and de novo. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012) (citation omitted). "To establish an ineffective assistance of counsel claim, a defendant must show that (1) counsel's performance was below an objective standard of reasonableness under prevailing professional norms and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *Id*. "A defendant must also show that the result that did occur was fundamentally unfair or unreliable." *Id*. "A reasonable probability is a probability sufficient to undermine confidence in the [trial's] outcome." *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

Defense counsel is not ineffective for failing to raise meritless objections. *Lockett*, 295 Mich App at 187; *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel."). We have determined that many of defendant's claims of prosecutorial error are meritless; therefore, counsel was not ineffective for failing to object as to those matters. *Id*.

To the extent that we have determined the prosecutor erred, we conclude that defendant has failed to meet his dual burden of establishing that counsel performed deficiently and that he was prejudiced. First, a trial counsel's decision not to object may be a strategic move designed to avoid drawing attention to an improper comment or question. *Bahoda*, 448 Mich at 287 n 54; *Unger*, 278 Mich App at 242 (declining to raise objections, especially during closing arguments, can often be consistent with sound trial strategy). Similarly, defense counsel may opt to refrain from objecting and choose to directly address a prosecutor's allegedly improper remarks. This occurred during defense counsel's closing in this case when he responded to the prosecutor's red-herring remark and denied "putting a spin on anything." In either case, this Court does not substitute its judgment for trial counsel's on matters of strategy. *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999). Second, in light of the trial court's curative instructions as well as the overwhelming evidence presented at trial, defendant cannot establish prejudice. *Lockett*, 295 Mich App at 187.

Affirmed.

/s/ Kathleen Jansen
/s/ Mark T. Boonstra
/s/ Anica Letica